MARY B. FRASER *v.* ROBERT H. MORRISON, ERNEST H. WILLERS, WILSON PANG, W. F. PARKER, D. B. A. THE BLUE CROSS ANIMAL HOSPITAL; AND ROY MAY, D. B. A. CITY COLLECTORS.

NO. 2842.

ARGUED APRIL 3, 1952.                DECIDED APRIL 26, 1952.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY STAINBACK, J.

This is an action in tort against the two defendants. The complaint sets forth two counts. Count I alleges that sometime in April, 1949, defendant Blue Cross Animal Hospital made demands upon plaintiff for $68.25 claimed to be

due from her for care of a dog; that Blue Cross Animal Hospital was informed (though it does not appear by whom) that plaintiff was ill at Queen's Hospital, that she did not own a dog, nor did she owe any money to the Blue Cross Animal Hospital; that defendant Blue Cross Animal Hospital was also informed there was another person having the same name as plaintiff living in the neighborhood and that she was a dog owner.

Count I further alleges that defendant Blue Cross Animal Hospital "failed, neglected and refused to make any adequate investigation of the matter" but assigned the claim to defendant Roy May, doing business as City Collectors, for collection, informing him that the debtor was a person by the name of Mary Fraser, living at an address which was the plaintiff's residence; that defendant Roy May failed to make an investigation but brought an action in assumpsit against the plaintiff in the district court of Honolulu on April 14, 1949; that a deputy sheriff of the Territory came to plaintiff's residence to serve a copy of this complaint and when informed by plaintiff that she didn't owe the money, that she owned no dogs and that she was ill, the deputy sheriff left and the district court complaint was never served upon the plaintiff herein; that in spite of this lack of service, defendant Roy May obtained a default judgment against plaintiff on April 18, 1949, and mailed a copy to the plaintiff.

On July 15, 1949, plaintiff engaged a district court practitioner to vacate the default judgment obtained against her by defendant Roy May on April 18; that the judgment was vacated and plaintiff had to pay $50 to the district court practitioner for his services.

Plaintiff further alleges in count I that from the second week in April, 1949, until July, 1949, the defendant Blue Cross Animal Hospital on "numerous and diverse occasions * * * continued to make telephone calls to the plaintiff at

her residence and continued to make demand for payment of said sum." Plaintiff alleges that on "several of these occasions" she again informed defendant she did not own a dog, that she did not owe any money to the Blue Cross Animal Hospital, that she was in poor health, and that the actions of the Blue Cross Animal Hospital were "having an injurious effect upon her health," and that "all of the foregoing acts of defendants and each of them were done wilfully and intentionally for the purpose of producing mental pain and anguish in attempting to collect an alleged debt which in fact was not due and owing to the defendants."

Count II alleges all of the foregoing facts in count I, except the allegation that the acts were done willfully and intentionally, but inserts an allegation of gross negligence and wanton disregard of the rights of plaintiff. It has an additional allegation that plaintiff called at the office of the Blue Cross to protest the said default judgment after she received a copy thereof but defendant Blue Cross insisted that plaintiff owed the money and in the presence of other persons unknown to plaintiff stated that plaintiff had personally brought a dog to Blue Cross for treatment; that all of the acts set forth in count II were the result of gross neglect evidencing a wanton disregard of the rights of plaintiff; that as a result of said negligence and disregard of plaintiff's rights, plaintiff suffered "serious physical injuries * * * grievous mental suffering and humiliation" and prays for damages consisting of "attorney's fee of Fifty Dollars ($50.00) * * * a debt of Seventy Five Dollars ($75.00) as and for medical treatment of the injury to her health * * *" and asks for judgment against the defendants and for special damages in the sum of $125, general damages in the sum of $2,500, and punitive damages in the sum of $5,000.

The two counts do not differ except the allegation in

the first count is that the actions were done intentionally for the purpose of causing mental anguish in collecting a debt not due, and in the second cause of action that the same actions constituted gross negligence.

Each of the defendants demurred on several grounds, the more important grounds being failure to state a cause of action and a misjoinder of parties defendant.

The court overruled the demurrer, stating that it was a very close case and allowed counsel to file interlocutory appeals.

For many years the courts uniformly held that the infliction of mental anguish standing alone, whether done intentionally or negligently, did not give rise to a cause of action. Various objections were given to protection from mental anguish; one was that it would throw the door wide open to fictitious and fraudulent claims and to litigation in the field of trivialities and mere bad manners; that it would be absurd for the law to seek to secure universal peace of mind; that "Against a large part of the frictions and irritations and clashing of temperaments incident to participation in community life, a certain toughening of the mental hide is a better protection than law could ever be." (Magruder, *Mental and Emotional Disturbance in the Law of Torts,* 49 Harv. L. Rev. 1033, 1035 [1936].)

The early decisions refused all remedy for mental suffering unless it could be brought within the scope of some already recognized tort; for example, mere words, however violent, threatening or insulting, did not constitute an assault and hence afforded no ground for redress. However, these same cases hold if they could find that an independent tort had been committed, no matter how technical or how trivial, they would allow damages for mental suffering.

The modern cases recognize that the intentional infliction of mental suffering may, standing alone, constitute

a tort and serve as the basis for an independent action. This is set forth in Restatement, Torts, section 312, as follows: "If the actor intentionally and unreasonably subjects another to emotional distress which he should recognize as likely to result in illness or other bodily harm, he is subject to liability to the other for an illness or other bodily harm of which the distress is a legal cause, * * *"

An excellent discussion of the intentional infliction of mental suffering as a "new" tort in itself is contained in 37 Mich. L. Rev. 874. It contains a full discussion of the authorities and the statement in *Davidson* v. *Lee,* 139 S. W. 904, 907, cited in *Barnett* v. *Collection Service Co.* (Iowa), 242 N. W. 25, 27, that "The rule that damages cannot be recovered for mental suffering unaccompanied by physical injury is not applicable when the wrong complained of is a *willful* one intended by the wrongdoer to wound the feelings and produce mental anguish and suffering, or from which such result should be reasonably anticipated, as a natural consequence."

Regarding the actions and language of bill collectors, the author says: "In recent years collecting creditors have come in for a great deal of attention. High pressure collection methods have not been received with any great degree of favor by the courts. The same is true of the very similar bullying tactics of insurance adjusters seeking to force a settlement. Wherever it can possibly be done without too obvious pretense, the effort has been to find a technical battery, an assault, a false imprisonment, a trespass in entering or remaining in the plaintiff's home, or an invasion of the 'right of privacy,' which itself seems to be in many cases nothing more than a right to be free from the intentional infliction of mental suffering. But in three recent cases in Iowa, Nebraska and North Carolina, where nothing whatever was involved except outrageously insulting collection letters or verbal abuse, the courts were faced

squarely with the issue, and proceeded to discard all such pretexts, and to hold the defendants liable for the real wrong." (37 Mich. L. Rev. 884.)

From these decisions we may deduce the rule that to permit recovery for mental suffering which may result in illness, three elements must be present: (1) that the act is intentional; (2) that it is unreasonable; and (3) that the actor should recognize it as likely to result in illness. Where we have these elements, the modern cases recognize that mere words, oral or written, which result in physical injury to another are actionable. (See *Bowden* v. *Spiegel, Inc.* [Cal.], 216 P. [2d] 571, and cases cited on pages 572 and 573.)

When we come to specific cases of creditors bringing pressure to bear on delinquent debtors by dunning letters, telephone calls or personal visitation, it would seem that the dividing line between those permissible and those that are not is whether the conduct was "without just cause or excuse and beyond all the bounds of decency."

The right of a creditor to inflict some worry and concern upon a debtor by reasonable means is generally acknowledged and accepted by all as the necessary and usual adjunct to the very existence of the credit system.

An examination of the complaint fails to show two of the three elements as set forth above. While alleging that the act was intentional, there is no allegation and the facts set forth do not show that the acts were unreasonable or beyond the bounds of decency or that the defendant should recognize such acts as likely to result in illness of the plaintiff. For aught that appears, the telephone calls were made at reasonable hours without any insulting language or threats, nor were these calls so continuous or prolonged as might constitute a nuisance.

As pleadings are taken most strongly against the pleader, it is obvious that the various telephone calls do not

appear unreasonable or beyond the bounds of decency, and we so find.

This disposes of the matter except as to the allegation that the default judgment was obtained by Roy May against plaintiff when she had not been served with summons. It does not appear how Roy May could obtain such default without service but, assuming that he did so, the defendant Blue Cross is not answerable for any misdeeds or illegal acts of the collection agency. A collection agency is an independent contractor for whose act the creditor is not responsible. (*Lynch Jewelry Co.* v. *Bass* [Ala.], 124 So. 222, and cases discussed therein.) There is, therefore, a misjoinder of parties defendant.

Permitting an interlocutory appeal of demurrer in this case appears to be bad practice for the simple reason that if the demurrer is overruled, as was here, and if no interlocutory appeal intervened, all the facts would have been placed in evidence; and if there were any ground for liability but plaintiff, through oversight or otherwise, had neglected to set forth the same, the complaint could be amended to conform the pleadings to the proof; if the demurrer were sustained, plaintiff would be allowed to amend his complaint if he could allege facts to meet the objections in the demurrer.

The question of what is the function of the judge and what is the function of the jury in mental tort cases should have some comment. We are not aware that this question, relative to the respective functions of judge and jury in cases of this type, has ever been directly presented for decision to any court. There is some intimation that what action is beyond the bounds of decency is a question for the court to consider after weighing the interests involved. On the other hand, in *Barnett* v. *Collection Service Co.* (Iowa), 242 N. W. 25, the court says: "A creditor or his agent has a right to urge payment of a just debt and to

threaten to resort to proper legal procedure to enforce such payment. In this case the *jury* could well find that appellants exceeded their legal rights, and that they willfully and intentionally sought to produce mental pain and anguish in the appellee, and that the natural result of said acts was to produce such mental pain and anguish." (Emphasis added.)

Again, in most tort cases, for example, negligence, the question of what constitutes reasonable care is a question for the jury, so in defamation (where the words are not libelous *per se*) the question of whether the words would tend to bring a man into hatred, ridicule or contempt is for the jury. The jury, being a cross section of the community, is in a much better position to decide the reasonableness of human conduct than a judge. This is the established rule in most cases regardless of the type of case. The preliminary question of whether the complaint states facts which, if proved, would permit the case to go to the jury is for the judge, but where men may well differ upon the reasonableness and the decency of the actions complained of, the question should be submitted to the jury under proper instructions from the court as to the law thereon.

In the case before us the facts alleged would not justify any finding that the attempts to collect the alleged claim were unreasonable and beyond the bounds of decency.

The order overruling the demurrer is reversed and the case is remanded for further proceedings in conformity with this opinion.

*W. F. Quinn* (*Robertson, Castle & Anthony* with him on the briefs) for appellant Blue Cross Animal Hospital.

*S. Landau* (*Landau & Fairbanks* on the brief) for appellant Roy May, dba City Collectors.

*B. C. Takayesu* (*N. K. Chung* with him on the brief) for appellee.