RALPH CHEDESTER and CHRISTINE VELTE-CHEDESTER, individually and on behalf of Sunshine Homeowner's Association, a Hawaii corporation, Plaintiffs-Appellees, Cross-Appellants, *v.* HERBERT C. STECKER, JAMES L. POTTER, M. MILLER HUGGINS, and MAUKA HUI, INC., a Hawaii corporation, Defendants-Appellants, Cross-Appellees

NO. 7448

CIVIL NO. 4092

APRIL 6, 1982

LUM, ACTING C.J., NAKAMURA, J., RETIRED JUSTICE OGATA IN PLACE OF RICHARDSON, C.J., ABSENT, AND INTERMEDIATE COURT OF APPEALS JUDGES HAYASHI AND PADGETT ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY PADGETT, J.

This case involves an appeal and cross-appeal from a judgment entered for plaintiffs-appellees after a jury verdict. The only claim submitted to the jury was one for damages for emotional distress arising out of claimed negligent conduct in the course of attempting to collect an assessment for a waterline in a subdivision. Defendants-Appellants appeal, claiming that absent some physical injury to person or property, there can be no recovery for the negligent infliction of emotional distress. Plaintiffs-Appellees cross appeal, claiming that the court below should have permitted several

of their various claims made in the complaint to go to the jury. We reverse, holding that it was error to send to the jury the issue of negligent infliction of emotional distress in the circumstances of this case; that it was error to grant a summary judgement on the claim concerning Appellant Stecker's alleged libel; and that it was also error to grant a directed verdict for appellants on the claim that there had been an intentional infliction of mental distress.

The present litigation arises out of what essentially is a dispute among neighbors over the assessment of a $1,000 charge to appellees with respect to a waterline. As is not uncommon in disputes among neighbors, especially where the matter winds up in court, there is a plethora of charges and countercharges between the parties involved. It would unduly extend this opinion to attempt to detail all of the evidence which was adduced in the course of the two-week trial which resulted in the jury verdict and judgment below.

Basically, appellees had a home and lot which was connected to the water system installed in the original Kona Sunshine Estates Subdivision. Whether or not the lot was in fact a part of that subdivision was the subject of conflicting evidence in the court below. Suffice as to say, the water system was inadequate for fire protection purposes. A new subdivision, mauka of the Kona Sunshine Estates Subdivision, was developed by certain of the appellants who were also, at the time, homeowners in the Kona Sunshine Estates Subdivision and officers of the Sunshine Homeowner's Association, a corporation organized for the ostensible purpose of remedying the inadequate water supply in the Kona Sunshine Estates Subdivision. The solution to the problem was to bring a new line through the new subdivision to which the existing lots could connect.

In February 1973, appellees received a letter from the secretary of the Sunshine Homeowner's Association, notifying them of the $1,000 assessment for the new waterline. A meeting of the Association followed. According to Appellee Ralph Chedester, he told Appellants Stecker and Huggins that he would write a letter to convince everyone to pay the $1,000 assessment if they would give him facts and figures to substantiate that assessment and Appellant Huggins assured him that he would get him the facts and figures. He further testified that the same thing happened at a meeting about a month later but that the promised justification was never forth-

coming. Approximately 15 months later, the appellees received a letter from an attorney, Lewis T. Sterry, demanding payment of the sum of $1,000 on or before July 22, 1974 "to avoid the necessity of the Association taking such action as may be appropriate to enforce the collection of these assessments." According to appellees, they were willing to make the payment but still wanted some justification of the $1,000 amount.

From this point on, matters deteriorated and the various individual appellants (in some cases on behalf of the appellant corporation) wrote letters and made statements which threatened to cut off the waterline to appellees' home; stated that appellees' lot was not part of the subdivision; threatened to close off the entrance to the Kona Sunshine Estates Subdivision so as to require appellees to provide a different access to their property; caused the adoption of new rules of the Association specifying that water and other services would be provided to properties only within the boundaries of the subdivision; and represented that appellees had never paid a membership fee to the Association (although a cancelled check for $250 for membership fee was introduced in evidence). At one point, one of the appellants notified the appellees that the fee was $2,000 per lot payable now and notified the appellees that in the event they sold their property, the new owner would not be supplied with water unless the $2,000 fee was paid.

On August 9, 1974, Appellant Stecker wrote a letter which was received by Appellant Potter in which he said in part:

> As president of Mauka Hui, Ltd. and one of the officers maligned by him to friends and strangers alike, I see no alternative to withdrawing my support from your fire protection and all other amenities unless and until Sunshine Homeowners Association cleans its house of such dissidents, free-loaders and rabble rousers and is able to come to us of Mauka Hui, Ltd. as a united body to renegotiate an agreement concerning the water system.

Appellees introduced evidence indicating that, as a result of appellants' conduct, they suffered serious emotional distress and illness.

At the close of all the evidence, the court below permitted the case to go to the jury only on the issue of negligent infliction of emotional distress. Appellees' other counts were dismissed either on summary judgment or by granting the motion for directed verdict.

The jury returned a verdict in favor of the appellees, awarding Appellee Ralph Chedester $24,000 in special damages and $151,000 in general damages and awarding Appellee Christine Velte-Chedester $1,000 in special damages and $36,000 in general damages. The court below denied appellants' post-trial motions, the judgment was entered, and this appeal followed.

We take up first appellants' appeal. Numerous grounds are raised by appellants for urging a reversal of the judgment below. We reach only the first and primary one, which is the contention that there is no tort liability for the negligent infliction of emotional distress in the circumstances of this case. We agree.

Stripped to its essentials, what appellants did in this case was to attempt to collect money from the appellees by resorting to various demands and threats. This Court, 30 years ago, in *Fraser v. Blue Cross Animal Hospital*, 39 Haw. 370 (1952), recognized the distinction between intentional and negligent infliction of mental anguish in the course of debt collection. It stated:

> From these decisions, we may deduce the rule that to permit recovery for mental suffering which may result in illness, three elements must be present: (1) that the act is intentional; (2) that it is unreasonable; and (3) that the actor should recognize it as likely to result in illness. Where we have these elements, the modern cases recognize that mere words, oral or written, which result in physical injury to another are actionable. . . .
>
> When we come to specific cases of creditors bringing pressure to bear on delinquent debtors by dunning letters, telephone calls or personal visitations, it would seem that the dividing line between those permissible and those that are not is whether the conduct was "without just cause or excuse and beyond all the bounds of decency."
>
> The right of a creditor to inflict some worry and concern upon a debtor by reasonable means is generally acknowledged and accepted by all as the necessary and usual adjunct to the very existence of the credit system.

39 Haw. at 375.

In *Ailetcher v. Beneficial Finance Co.*, 2 Haw. App. 301, 632 P.2d 1071 (1981), our Intermediate Court of Appeals stated:

> As to Count VI (negligent infliction of emotional distress), we hold that in the context of an attempt to collect a debt, we are

bound by the decision in *Fraser v. Blue Cross Animal Hospital,* 39 Haw. 370 (1952) which limits recovery in such instances to intentional wrongs. . . .

2 Haw. App. at 304.

The cases in this jurisdiction which have allowed, in negligence actions, recovery of damages for his or her emotional distress, by one not physically injured, have all involved some physical injury to property or a person. Where damages for emotional distress are allowed in the absence of a physical injury, such as in actions for malicious prosecution, malicious abuse of discretion, false imprisonment and the like, the tort has been an intentional one. Accordingly, we hold the court below erred in sending the count with respect to the negligent infliction of emotional distress to the jury.

On the other hand, it is apparent to us that there was sufficient evidence on the three elements set forth in *Fraser v. Blue Cross, supra,* to have allowed the count concerning the intentional infliction of emotional distress to go to the jury. The acts of the appellants complained of were obviously intentional. Obviously, also, a jury could find that they were unreasonable. (We might add that we equate "unreasonable" with the later phrase in the *Fraser* opinion, "without just cause or excuse and beyond all bounds of decency" (39 Haw. at 375) and with the term "outrageous" as used in 1 RESTATEMENT (SECOND), TORTS § 46 (1965).)[1]

We think also that whether appellants should have recognized their conduct as likely to result in illness was a jury question. As we said in *Rodrigues v. State,* 52 Haw. 156, 174, 472 P.2d 509 (1970), it was for the trier of facts to "decide whether, under the facts of this case, serious mental distress to the plaintiff was a reasonably foreseeable consequence of the defendant's act." *Compare Silva v. Bisbee,* 2 Haw. App. 188, 628 P.2d 214 (1981) and *Ailetcher v. Beneficial Finance Co., supra.*

With respect to Count I, the libel count against Appellant Stecker, the court below granted a summary judgment on the

---

[1] The size of the verdict in the trial below may very well indicate a jury's perception that appellants' conduct was outrageous.

ground that the alleged libel was *de minimis*. This apparently was based upon the fact that the affidavits established that Appellant Stecker sent the letter in question only to the appellees and showed it only to Appellant Potter. However, the law is clear that it is sufficient if a libel is communicated to only one person other than the person defamed. 50 AM. JUR.2d, LIBEL AND SLANDER § 152 (1970).

Appellants argue that the summary judgment should be upheld because the words used were not libelous per se. Normally, however, where the words used in their context are reasonably susceptible of both an innocuous and a defamatory meaning, the question of whether they are libelous per se is one for the jury. *Baldwin v. Tribune-Herald*, 30 Haw. 610 (1928). In this case, however, we need not pass upon the question of whether the words used in their context were libelous per se or per quod because appellees did plead special damages and thus, even if the words used in their context were libelous only per quod, they would be actionable. We cannot say, from the record before the trial judge at the time he granted the motion for summary judgment, that cognizable special damages could not have resulted from the publication of the letter in question to Appellant Potter.

Appellants also argue that Stecker, as president of the Association, had a qualified privilege to write the letter in question. In the first place, reading the letter, we think a jury could find that Stecker wrote it not as an official or even a member of the Association but on behalf of Appellant Mauka Hui, Inc. Even if we were to assume that Appellant Stecker was acting in the capacity appellants claim, we cannot say that as a matter of law, Appellant Stecker was acting reasonably in discharge of some public or private duty in uttering the libel. At best, from appellants' standpoint, this would be a jury question.

With respect to the direction of a verdict in favor of the appellants on Count V of the Third Amended Complaint, civil conspiracy, Count VI, breach of fiduciary duty, Count VII, breach of duty and care and loyalty, Count X, alleged libel and slander by Appellant Potter and the trial court's direction of a verdict in favor of the appellants on the issue of punitive damages, we find nothing in the record to support appellees' claims and accordingly, affirm the action of the court below with respect to these matters.

Reversed and remanded for a new trial.

470

*Tom C. Leuteneker (Carlsmith, Carlsmith, Wichman & Case* of counsel) for plaintiffs-appellees, cross-appellants.

*Lawrence W. Cohn (Cohn & Smith* of counsel) for defendants-appellants, cross-appellees.