Frederika Lee LAPINAD, Plaintiff,

v.

PACIFIC OLDSMOBILE–GMC, INC., A Hawaii Corporation; Calvin Asahi, individually and as an employee of Pacific Oldsmobile–GMC, Inc.; Betty Ebbens, individually and as an employee of Pacific Oldsmobile–GMC, Inc.; Tom Griffin, individually and as an employee of Pacific Oldsmobile–GMC, Inc.; James Matsuura, also known as "Shaft" Matsuura, individually and as an employee of Pacific Oldsmobile–GMC, Inc.; Dan Powers, individually and as an employee of Pacific Oldsmobile-GMC, Inc.; Tak Sugimora, individually and as an employee of Pacific Oldsmobile–GMC, Inc.; John Does 1–10; Jane Does 1–10; Doe Corporations 1–10; and Doe Partnerships 1–10, Defendants.

Civ. No. 87–0408.

United States District Court,
D. Hawaii.

Feb. 17, 1988.

Martin A. Steinberg, Waipahu, Hawaii, for plaintiff.

Bert T. Kobayashi, Jr., Lex R. Smith, Honolulu, Hawaii, for Pacific Oldsmobile–GMC, Inc., Calvin Asahi, Betty Ebben, Tom Griffin, Dan Powers and Tak Sugimura.

Stanford H. Nakamoto, Comack, Kiuchi & Nakamoto, Honolulu, Hawaii, for James Matsuura.

Fujiyama, Duffy & Fujiyama, Wallace Fujiyama and John Marshall, Honolulu, Hawaii, for Pacific Oldsmobile–GMC, Inc.

ORDER DENYING MOTION FOR
PARTIAL SUMMARY
JUDGMENT

KAY, District Judge.

### I. THE PRESENT MOTION

Defendants move the court for summary judgment on counts 3, 5, 6, 7, and 8 of

plaintiff's complaint, which has a total of ten counts. Summary judgment is sought on behalf of defendant Pacific Oldsmobile–GMC, Inc. (Pacific) as to all five of these counts, and on behalf of the individual defendants only as to counts 3 and 7.

## II. BACKGROUND

Plaintiff was hired by Pacific in June, 1986 as a business manager trainee. Within a month, Plaintiff was made a full manager and assigned to Pacific's used car lot where she began working on a daily basis with defendant Matsuura, who was a reconditioning man and assistant manager of the used car lot. Plaintiff alleges that on September 5, 1986, Matsuura physically assaulted Plaintiff by grabbing her breast and buttock.

Plaintiff reported the incident to several supervisors, who failed to take remedial action. On September 22, 1986, defendant Dan Powers told Plaintiff to take 2 to 4 days off while he looked into the matter. However, the next day, Plaintiff was called back into work and informed that she would be moved into a newly created position. Plaintiff was then fired for poor job performance after less than two weeks had passed.

Plaintiff filed claims with both state and federal agencies, both of which issued Right to Sue letters without making any determination on the merit of the claims.

Plaintiff filed the present complaint on May 29, 1987. This complaint contains ten counts: (1) sex discrimination in violation of Title VII, against all defendants; (2) sexual harassment in violation of Title VII, against all defendants; (3) wrongful discharge, against all defendants; (4) violation of HRS § 378–2, against all defendants; (5) assault and battery, against Matsuura only; (6) invasion of privacy, against Matsuura only; (7) infliction of emotional distress, against all defendants; (8) slander, against Matsuura and Griffin only; (9) breach of implied warranty of good faith, against all defendants; (10) breach of contract, against Pacific and Griffin only.

## III. ANALYSIS

Initially, Pacific had sought summary judgment as to counts 3, 5, 6, 7, 8. In her reply memorandum, however, Plaintiff clarified that counts 5 and 6 were directed only against Matsuura and count 8 only against Matsuura and Griffin. Defendants indicate that they do not request summary judgment as to the individuals named in counts 5, 6, and 8. The parties do not, therefore, dispute the disposition of the present motion as to counts 5, 6, and 8, and it is only counts 3 (wrongful discharge) and 7 (intentional infliction of emotional distress) which must be examined.

On a motion for summary judgment, this court must view the facts presented in a light most favorable to the party opposing the motion. Drawing all reasonable inferences in favor of that party, summary judgment must be denied if a rational trier of fact might resolve the issues disputed in favor of the non-moving party. *T.W. Electrical Service v. Pacific Electrical Contractors*, 809 F.2d 626, 631 (9th Cir.1987).

### A. *Wrongful Discharge*

In *Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 652 P.2d 625 (1982), the Hawaii Supreme Court examined the cause of action for wrongful discharge in the "at will" employment setting. The court recognized that historically, "the employer's right to discharge 'for good cause, for no cause or even for cause morally wrong' was absolute." *Id.* at 375, 652 P.2d 625. This doctrine prevails, unless there is some statute, collective bargaining agreement, or contractual provision to the contrary. In *Parnar*, the court discussed possible theories whereby a duty could be imposed on an employer in the absence of an express agreement or a statute. The court was not then presented with the issue of whether a contractual obligation could be imposed on an employer based on the circumstances of the employment relationship, but stated explicitly that there is no implied requirement of general good faith.

The *Parnar* court did recognize an exception based on a tort theory, however. The court recognized that when an employ-

er's motivations for terminating an at will employee violate a clear public policy, the employee has a cause of action for wrongful discharge:

> an employer may be held liable in tort where his discharge of an employee violates a clear mandate of public policy. In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior judicial decisions may also establish the relevant public policy.

*Id.* at 380, 652 P.2d 625. In *Parnar,* the Plaintiff alleged that she was discharged in order to induce her to leave the jurisdiction and thus prevent her from testifying about possible antitrust violations by her employer. The court held that a retaliatory discharge in furtherance of antitrust violations contravenes public policy, and allowed the plaintiff to proceed on the claim.

█ In the present case, Plaintiff argues that she qualifies under the public policy exception. She alleges that she was attempting to exercise her rights under 42 U.S.C. § 2000e (Title VII) and 29 C.F.R. § 1604.11 (relating to sexual harassment) to have a workplace free of discrimination and sexual harassment, and that as a result of her complaints about the assault and harassment of Matsuura, she was discharged.

It is true that Title VII establishes a legislative policy in favor of preserving a workplace free from sexual discrimination. Plaintiff's contention is that a dismissal based on sex discrimination would violate the public policy embodied by these statutory schemes, and this would seem to be true.

Courts have been reluctant, however, to extend the public policy exception to the at will doctrine beyond what is necessary to protect the public interest at stake. In *Parnar,* the court stated that the decisions recognizing the exception "manifest a reluctance of courts to unjustifiably intrude on the employment arrangement or to arrogate to themselves the perceived legislative function of declaring public policy." *Id.* at 379, 652 P.2d 625. Thus, this exception was intended to apply to a "narrow class of cases" where the wrongful discharge action is seen as necessary to effectuate the public policy at stake. If, however, the statutory or regulatory provisions which evidence the public policy themselves provide a remedy for the wrongful discharge, provision of a further remedy under the public policy exception is unnecessary. If the legislature has considered the effect of wrongful discharge on the policies which they are promoting, provision by the courts of a further remedy goes beyond what the legislature itself thought was necessary to effectuate that public policy. In *Parnar,* the court noted that the antitrust laws had been construed to provide a treble damage remedy for an employee discharged for refusing to participate in an illegal price-fixing scheme. The court was forced to recognize a wrongful discharge claim in that case in order promote the policy of preventing an employer from furthering antitrust violations by firing employees.

In *Lui v. Intercontinental Hotels Corp.,* 634 F.Supp. 684 (D.Hawaii 1986), the court was presented with a similar situation. Although the court stated that neither Title VII nor HRS § 378–2 were exclusive remedies, the court held that the plaintiff could not assert a wrongful discharge claim under the public policy exception. "[T]he public policy plaintiff advances is Hawaii Rev.Stat. ch. 378, the employment discrimination statute. Where the policy is one created by statute, the statutory remedy is exclusive." *Id.* at 688. Thus, even though Title VII is not an exclusive remedy, in that it does not abrogate remedies which already existed, it does not create an additional common law remedy beyond the specific remedies contained in the statute. *See also McCluney v. Jos. Schlitz Brewing Co.,* 489 F.Supp. 24, 26–7 (E.D.Wis.1980) ("It would be contrary to precedent to assume that Wisconsin courts would imply a private cause of action to uphold a public policy when the state legislature has already provided enforcement mechanisms to vindicate such policies."); *Bruffet v. Warner Communications, Inc.,* 692 F.2d 910,

915–20 (3d Cir.1982); *Kamens v. Summit Stainless, Inc.*, 586 F.Supp. 324, 329 (E.D. Penn.1984).

In this case, Plaintiff does not assert that the statutory scheme expressing the public policy upon which she relies is unable to provide a remedy; indeed, Plaintiff's complaint includes counts based on both Title VII and HRS § 378–2.

■ Although Plaintiff does not have a cause of action for wrongful discharge based on the public policy exception to the "at will" doctrine, Plaintiff submitted late an affidavit which raises the issue of whether her employment was "at will" or whether, under *Kinoshita v. Canadian Pacific Airlines, Ltd.*, 724 P.2d 110 (Hawaii 1986), the printed guidelines for dismissal of employees constitutes an enforceable contract the breach of which may give rise to a cause of action for wrongful discharge. Although this theory was not raised in the memoranda submitted in opposition to the present motion for summary judgment, the affidavit submitted raises an issue of fact as to whether this theory would apply, and summary judgment on the wrongful discharge claim is not appropriate at this time.

## B. *Intentional Infliction of Emotional Distress.*

■ Worker's compensation law complicates the determination of whether plaintiff is entitled to recover for emotional distress. The initial issue is whether the exclusivity provision of worker's compensation law prevents recovery for intentional infliction of emotional distress. Hawaii Rev.Stat. § 386–5 provides that the remedies provided by worker's compensation are to be exclusive, and the Hawaii courts have sought liberal extension of the applicability of worker's compensation. *See, e.g.,* *Chung v. Animal Clinic, Inc.*, 63 Haw. 642, 636 P.2d 721 (1981); *Royal State National Insurance Co. v. Labor & Industrial Relations Appeal Board*, 53 Haw. 32, 487 P.2d 278 (1971). Hawaii courts have not, however, directly considered the issue of the applicability of the exclusivity provisions to a claim for intentional infliction of emotional distress.

In California, the issue has been considered in several cases. In *Renteria v. County of Orange*, 82 Cal.App.3d 833, 147 Cal.Rptr. 447 (1978), the court held that an intentional infliction of emotional distress claim "constitutes an implied exception to the exclusive remedies provisions of [California worker's compensation law]." *Id.* 147 Cal.Rptr. at 452. The court felt that since emotional injury is not compensable under worker's compensation, to prevent an employee from bringing such an action would simply insulate employers from liability for an intentional tort. *See also* *McGee v. McNally*, 119 Cal.App.3d 891, 174 Cal.Rptr. 253 (1981). In *Russell v. Mass. Mut. Life Ins. Co.*, 722 F.2d 482 (9th Cir. 1983), reversed on other grounds, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Ninth Circuit held that California worker's compensation law did not prevent a cause of action for intentional infliction of emotional distress, regardless of accompanying physical injury. The facts in *Russell* were similar to the present case: the distress claim was based on the circumstances surrounding an employer's handling of an employee's claim for disability benefits and the termination of that employee.

Defendants cite *Spratley v. Winchell Donut House, Inc.*, 188 Cal.App.3d 1408, 234 Cal.Rptr. 121 (1987) for the proposition that worker's compensation is the exclusive remedy for injuries arising out of employment. In *Spratley*, plaintiff alleged that the defendant employer had made fraudulent representations that it had taken steps to assure her safety in accepting a night job. Plaintiff was assaulted, and sued for fraud and breach of covenant, seeking damages, including suffering and emotional distress. In *Spratley*, however, the court expressly distinguished the *Renteria* case because *Renteria* "involved only the narrow issue of 'an employee's remedies for intentional infliction of emotional distress,' a cause of action not asserted here." *Spratley*, 234 Cal.Rptr. at 124. *Spratley*, on the other hand, involved a claim for emotional distress as an element of dam-

ages arising from a physical injury which was covered by worker's compensation.

The rationale for allowing an independent cause of action for emotional distress explained in *Renteria* and approved by the Ninth Circuit in *Russell* is that unless a tort action is allowed, an employer would be able to intentionally inflict emotional injuries without fear of a claim against them. This reasoning is not entirely consistent, since other intentional torts are barred by worker's compensation. In *Lui v. Intercontinental Hotels Corp.*, 634 F.Supp. 684 (D.Haw.1986), the court held that because of the "liberal unitary approach" to worker's compensation, an assault and battery committed by an employer must be compensated for under worker's compensation. It would seem somewhat inconsistent to allow a separate action where an employer outrageously berates an employee, but not where the employer punches the employee.

However, in the case of intentional infliction of emotional distress, there is an entire class of harms which are left uncompensated under worker's compensation. Under the scheme of worker's compensation, employees have lost a right to sue employers for disabling injury, but they have gained a right to a more easily obtained, no-fault remedy. Worker's compensation does not, however, provide any remedy for non-disabling emotional injury. This court is reluctant to imply an exception to the exclusivity provisions of worker's compensation when the Hawaii courts have not addressed the issue, but such an exception appears to be a reasonable solution to the problem of leaving a class of plaintiffs with emotional injuries without any remedy at all. *See* Larson, *Workmen's Compensation Law* § 68.34(a) (1987) ("If the essence of the tort, in law, is non-physical, and if the injuries are of the usual non-physical sort, with physical injury being at most added to the list of injuries as a makeweight, the suit should not be barred.")

In *Parnar, supra,* the Hawaii Supreme Court stated in a footnote that "[w]e do not reach the issue whether a wrongful discharge gives rise to a cause of action for the intentional infliction of emotional distress. *See Agis v. Howard Johnson Co.,* 371 Mass. 140, 355 N.E.2d 315 (1976)." *Id.* 65 Haw. at 380 n. 16, 652 P.2d 625. Since the plaintiff in *Parnar* had not asserted a claim for intentional infliction of emotional distress, the Hawaii Supreme Court's volunteering such a footnote could be construed as an indication of the court's willingness to allow such a claim. The court notes that in *Yanai v. Japan Air Lines Company, Ltd.,* 118 L.R.R.M. 2042, Civil No. 84–0369 (D.Hawaii 1984), Judge Fong dismissed a claim for intentional infliction of emotional distress based on the fact that the Hawaii Supreme Court had not yet recognized the tort under the circumstances of a wrongful discharge, and based on a finding that the alleged wrongful discharge did not qualify as sufficiently "outrageous" conduct to qualify under the requirements of the Restatement of Torts (Second) § 46. It is not clear, however, that the circumstances surrounding a wrongful discharge could never reach a sufficient level of outrageousness to support such a claim.

■ Hawaii has recognized a cause of action for intentional infliction of emotional distress absent accompanying physical injury. *See Chedester v. Stecker,* 64 Haw. 464, 643 P.2d 532 (1982). In order to recover, a plaintiff must show "(1) that the act is intentional; (2) that it is unreasonable; and (3) that the actor should recognize it as likely to result in illness." *Fraser v. Blue Cross,* 39 Haw. 370, 375 (1952). The court in *Chedester* equated the term "unreasonable" with the phrase "without just cause or excuse and beyond all bounds of decency" and "outrageous" as used in the Restatement (Second) Torts § 46 (1965). *Chedester,* 64 Haw. at 468, 643 P.2d 532.

In *Agis,* which was cited by the court in *Parnar,* a Massachusetts court newly recognized a cause of action for intentional infliction of emotional distress absent accompanying physical injury, and held that a discharged employee had sufficiently stated such a cause of action by alleging the requisite outrageous conduct; namely, that her employer had fired her simply because her name was at the top of an alphabetical

list, amid accusations of theft (the employer was firing waitresses in alphabetical order until he found out which one had been stealing from the restaurant).

In evaluating the sufficiency of a claim for intentional infliction of emotional distress, the court is to evaluate the facts pleaded in support of the claim, and "determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." *Salazar v. Furr's, Inc.*, 629 F.Supp 1403, 1411 (D.N.M.1986), *quoting* Restatement (Second) Torts § 46 comment h. *See also Redgrave v. Boston Symphony Orchestra, Inc.*, 557 F.Supp. 230, 236 (D.Mass.1983) ("It is the responsibility of the court in the first place to determine whether the conduct alleged may reasonably be viewed as extreme, outrageous and beyond all possible bounds of decency.").

Complaints which have been held to properly state a cause of action against an employer for intentional infliction of emotional distress have generally included allegations of actions which go beyond simple unfairness or insensitivity. For example, in finding a plaintiff's accusations insufficient as a matter of law to support an intentional infliction count, one court stated:

> While Defendant's alleged behaviors were surely hurtful and unpleasant, they are not on a par with the egregiousness of facts in cases which did successfully raise intentional infliction of emotional distress claims. Those cases involved actions which were less ordinary, more humiliating and even less socially acceptable than the acts complained of herein.

*Salazar v. Furrs, Inc., supra.* at 1411. In *Salazar*, the plaintiff alleged that her employer had fired her because she was pregnant and to prevent her pension from vesting. The reason that the employer had given for the dismissal was that her husband worked for a competitor. The court stated that such conduct did not rise to the level of egregiousness required by the Restatement.

In order to properly allege outrageous conduct by an employer, it would seem necessary that the employer engaged in some conduct which goes beyond merely firing an employee for what are seen as unfair reasons. Generally, this includes such things as racial slurs and accusations of criminal behavior. *See Salazar, Id.* at 1411.

In this case, Plaintiff has alleged that Pacific fired her for sexually discriminatory reasons, and that Pacific knew or should have known of the continuing sexual harassment of Plaintiff and did nothing to correct it.

Other than the incident involving Matsuura, Plaintiff alleges continuing sexual harassment and termination in violation of the law, but no inflammatory confrontation regarding these matters wherein the employer acted in an outrageously offensive manner. Outrageous behavior is easiest to find where there is an incident in which the employer acts in an offensive manner. For example, in *Agis, supra*, the court held that there was at least a reasonable possibility of finding outrageous behavior because of a confrontation at a meeting where the manager of a restaurant gathered the waitresses together at a meeting and stated that he would begin firing them in alphabetical order. The plaintiff alleged that "as a result of this incident" she suffered emotional distress. *Id.* 355 N.E.2d at 317. In the present case, Plaintiff alleges certain specific outrageous incidents, which she claims constitute a course of outrageous conduct by her employer.

On the other hand, Plaintiff does accuse her employer of allowing and even condoning sexual harassment. Sexually harassing behavior is outrageous, and to the extent that the employer participated in or allowed such behavior, it would seem at least as actionable as racial slurs and accusations of criminal conduct.

At this point, it would appear that the conduct of defendant Matsuura was sufficiently outrageous to support the claim for emotional distress, and it is a question of fact as to whether the conduct of the other defendants in participating in, encouraging,

or condoning such actions also rises to the required level of outrageousness. The line between behavior which is "outrageous" and behavior which is "hurtful and unpleasant" is not very clear, but it appears that Plaintiff might be able to show that the actions of these defendants were sufficiently outrageous.

Accordingly, it is hereby ORDERED that Defendant's Motion for Partial Summary Judgment is DENIED, provided, however, that summary judgment on count 3, Plaintiff's claim for wrongful discharge, is denied without prejudice. In addition, leave is granted to move for reconsideration of this order should the Hawaii state courts rule on the issue of preclusion of intentional infliction of emotional distress claims under worker's compensation. Finally, Plaintiff has agreed that counts 5 and 6 are directed only against Matsuura and count 8 is directed only against Matsuura and Griffin.