53 F.3d 338
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Kildee JACOBSEN-WAYNE, Plaintiff-Appellant,
v.
CALVIN C.M. KAM, M.D., INC., Defendant-Appellee.
 No. 93-16807.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 31, 1994.
Decided April 20, 1995.
 
 Before: BROWNING, TROTT, and KLEINFELD, Circuit Judges.
 
 ORDER
 
 1
 Dismissal of Jacobsen-Wayne's claims pursuant to Fed. R. Civ. P. 12(b)(6), except for the products liability claim, was improper. A review of the complaint reveals that Jacobsen-Wayne did state a cause of action for negligence, for fraud, and for intentional infliction of emotional distress. We note, however, that Jacobsen-Wayne appended the allegedly offending doctor's report to the complaint. On the face of the report, nothing appears that would demonstrate the veracity of Jacobsen-Wayne's allegations. The district court's dismissal may well prove to be prophetic if Jacobsen-Wayne is unable to generate the genuine issues of material fact necessary to sustain her allegations, but these are matters appropriately disposed of pursuant to a motion for summary judgment, not a motion to dismiss for failure to state a claim.
 
 
 2
 REVERSED and REMANDED for further proceedings.
 
 KLEINFELD, Circuit Judge, dissenting:
 
 3
 I respectfully dissent, and would affirm. I am concerned that entertaining so meritless a claim as this through summary judgment may needlessly deter physicians from providing truthful independent medical reports in tort and workers' compensation cases. Jacobsen-Wayne has failed to state a claim upon which relief could be granted, so dismissal was proper.
 
 I.
 
 4
 Jacobsen-Wayne worked for the Hyatt Regency Hotel in Maui, taking care of the hotel's flock of decorative tropical birds. She was hurt in by multiple falls while on the job. First, she tripped over a guest while being nipped by a peacock, and fell on top of the guest. A second injury occurred when she attempted to carry a 50 pound bag of nuts. Finally, she was injured in a car accident, when an acquaintance was driving her to the doctor after she awoke to sharp pains she attributes to the nut bag accident. She filed a claim for workers' compensation against the hotel relating to these injuries.
 
 
 5
 The workers compensation carrier required, in accord with the state workers' compensation statute, that she submit to a medical examination by a physician designated by the hotel. That physician examined her and also studied her medical record. He sent a written report to Alexis Risk Management, the workers' compensation carrier. The report said that the work-related injuries were "minimal and trivial," and that "there were significant preexisting psychosocial problems that affected her ability to work."
 
 
 6
 Ms. Jacobsen-Wayne sued the doctor for what he said in his report. She does not allege that his examination harmed her, or that he harmed her while treating her. Her complaint alleges several torts based on what he said about her in the report to the carrier. The district court dismissed the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted.
 
 II.
 
 7
 The Rule 12(b)(6) dismissal is reviewed de novo. Rae v. Union Bank, 725 F.2d 478, 479 (9th Cir. 1984). We proceed through each claim stated in the complaint, to determine whether it states a claim upon which relief could be granted. If not, then defendants were entitled to have it dismissed without further expenditures on defense.
 
 
 8
 A. Negligence.
 
 
 9
 The complaint alleges negligence, in that the doctor erred in describing her medical condition. This fails to state a claim, because the doctor's duty to exercise reasonable care in the performance of his professional duties ran to his employers, the insurance company and the hotel. He did not have a duty to Ms. Jacobsen-Wayne with regard to the care exercised in reporting on her condition.
 
 
 10
 Ms. Jacobsen-Wayne did not hire the doctor to examine or treat her. She was not his patient. He did not prescribe for her or treat her. She submitted to the examination as part of the process of obtaining workers' compensation for her claimed injury, pursuant to Hawaii statute. Haw. Rev. Stat. Sec. 386-79 (1975).
 
 
 11
 Sec.386-79. Medical examination by employer's physician.
 
 
 12
 After an injury and during the period of disability, the employee, whenever ordered by the director of labor and industrial relations, shall submit oneself to examination, at reasonable times and places, by a duly qualified physician or surgeon designated and paid by the employer.
 
 
 13
 Id. Personal injury lawyers call such examinations "independent medical examinations." The word "independent" in this context means independent of the plaintiff or claimant, not independent in the sense of neutral or court-appointed. Compare Haw. Rev. Stat. Sec. 386-80 ("Examination by impartial physician") with Haw. Rev. Stat. Sec. 386-79. The examination is, pursuant to the statute, "designated and paid by the employer." Haw. Rev. Stat. Sec. 386-79. The negligence claim asserted by the complaint presupposes that a physician performing an independent medical examination is liable in tort to the person examined if his report, on account of negligence, misstates the person's condition to her detriment.
 
 
 14
 The Hawaii Supreme Court has not yet had occasion to speak on this specific issue, but I have no reason to doubt that it would follow the overwhelming majority rule. That rule is that the doctor's duty of care in preparation of such a report runs to his employers, not to the person examined. Kahn v. Burman, 673 F. Supp. 210, 215 (E.D. Mich. 1987) (Churchill, J.); Keene v. Wiggins, 69 Cal. App. 3d 308, 313-14, 138 Cal. Rptr. 3, 7 (1977); LoDico v. Caputi, 517 N.Y.S.2d 640, 129 A.D.2d 361 (N.Y. App. Div. 1987).
 
 
 15
 This policy of providing for reasonably unobstructed access to relevant facts and issues mandates the extension of immunity to Dr. Burman for all statements made in his reports .... The overriding concern for disclosure of pertinent and instructive expert opinions before and during medical malpractice actions is no less significant than the clearly recognized need for all relevant factual evidence during the course of litigation ....
 
 
 16
 If doctors who provide expert reports are subjected to civil liability for the contents of their reports, fewer doctors will be willing to evaluate potential malpractice claims in advance of litigation ....
 
 
 17
 Any other result would contravene the policy rationale ... and have a chilling effect on the solicitation of expert evaluation of potential claims ...."
 
 
 18
 Kahn, 673 F. Supp at 213-14.
 
 
 19
 The scholarly and thoughtful opinion by Judge Churchill in Kahn explains why liability to the person examined would subvert honest and fair handling of claims disputes. Ms. Jacobsen-Wayne claimed to be hurt badly, so that she was entitled to money. Her employer's insurance company doubted that her claim was truthful and well-founded. The workers' compensation board had to decide what was true. The truth seeking process was aided by enabling the employer to obtain the services of a physician to examine her and review her medical history who was not in a professional relationship which might cause him to favor her pecuniary interests, or to resolve doubt regarding the truth of her complaints in her favor for purposes of treatment.
 
 
 20
 The physician had no duty to exercise reasonable care in the preparation of his report to Ms. Jacobsen-Wayne, because she did not hire him. He was not retained by anyone to treat her or render any medical care of any kind to her or for her benefit, and the report was not prepared in order to render a service to her. Jacobsen-Wayne cites a Texas Court of Civil Appeals case which suggests that such a physician must nevertheless serve her, Armstrong v. Morgan, 545 S.W.2d 45 (Tex. Civ. App. 1976). I believe that Hawaii would more likely follow the overwhelmingly predominant weight of authority to the contrary. Even the Texas Civil Appeal case she cites is contradicted by another Texas Civil Appeals case, going the opposite way. Johnson v. Sibley, 558 S.W.2d 135 (Tex. Civ. App. 1977). It is hard to see how someone hired as an expert in an adversary process by one side could serve that side properly while also serving the adverse side.
 
 
 21
 B. Fraud.
 
 
 22
 Jacobsen-Wayne's fraud claim is that Dr. Kam held himself out to be impartial, a representation that was knowingly false when made, and that this representation induced her to place herself in his "fiduciary-like control." She does not claim, in her fraud claim, that the doctor lied in his report. This is not a fraud claim in the nature of "the doctor knew I was hurt, but lied and said I was not hurt." The district judge properly dismissed the fraud claim, because Jacobsen-Wayne could not justifiably rely on such a representation for the purposes she claims, even assuming such a representation was made.
 
 
 23
 Ms. Jacobsen-Wayne had to submit the such a medical examination, whether she chose to or not, as a condition of pursuing her workers' compensation claim. Haw. Rev. Stat. Sec. 386-79 (1975). The doctor did not have to sell his qualifications and honesty to Ms. Jacobsen-Wayne. The independent medical examination was not up to her. If she wanted to collect workers' compensation, she was required to submit to the independent medical examination. Nor, as explained above, is such an examination required to be independent in the sense of being impartial. The doctor performing it works openly for the employer and insurance company, not the court or the claimant.
 
 
 24
 A person who makes a fraudulent statement is only liable to those he could reasonably expect to act in reliance. Eaton Corp. v. Easton Associates, 728 F.2d 285, 292-93 (6th Cir. 1984); Restatement (Second) of Torts Sec. 531 (1977); see, e.g., Kahn, 673 F. Supp. at 215 (dismissing the defendant's fraud claim against plaintiff's expert medical witness because the defendant had no reliance interest in the report). Jacobsen-Wayne had no reliance interest in the report.
 
 
 25
 C. Wrongful Infliction of Intentional Injury.
 
 
 26
 Jacobsen-Wayne's third claim is entitled "wrongful infliction of intentional injury." I have searched the Hawaii reports, the Restatement (Second) of Torts, Prosser, and Harper and James, in vain for any such tort. There is no such tort.
 
 
 27
 The substance of the claim alleged under that heading is that the doctor intentionally wrote a false report which caused emotional injury to Ms. Jacobsen-Wayne. We are required to review a 12(b)(6) dismissal de novo, and to determine whether the facts stated could amount to a claim upon which relief could be granted. Conley v. Gibson, 355 U.S. 41, 45 (1957). Reading this most liberally to Ms. Jacobsen-Wayne, the claim is one for intentional infliction of mental distress.
 
 
 28
 Hawaii recognize the tort of intentional infliction of mental distress. Fraser v. Blue Cross Animal Hospital, 39 Haw. 370 (1952). In Fraser, the Hawaii Supreme Court held that the cause of action was available even in the absence of physical injury to property or person. It gave three elements that must be present:
 
 
 29
 "(1) that the act is intentional; (2) that it is unreasonable; and (3) that the actor should recognize that it is likely to result in illness."
 
 
 30
 Id. at 375. The second element, unreasonableness, has been defined by the Hawaii Supreme Court as meaning: "without just cause or excuse and beyond all bounds of decency." Id. Hawaii equates this with the term "outrageous" used in the Restatement of Torts. Chedester v. Stecker, 664 Haw. 464, 43 P.2d 532 (Haw. 1982) (citing 1 Restatement (Second) of Torts Sec. 46 (1946)).
 
 
 31
 The district court correctly held that as a matter of law, Dr. Kam's actions were not unreasonable. Under Hawaii law, whether an act is unreasonable for the purposes of this tort is first a question for the court, and only left to the jury when reasonable persons could differ. Fraser v. Blue Cross Animal Hospital, 39 Haw. at 377 (1952). The Hawaii Supreme Court stated that a court should decide whether "the facts alleged would ... justify any finding that the [alleged acts] ... were unreasonable and beyond the bounds of decency." Id. at 377.
 
 
 32
 The case is nothing like the examples of outrage in the Restatement. See Restatement (Second) of Torts Sec. 46 (1977). Nor does it resemble the bombardment of improper dunning letters and collection techniques by creditors, the subject of Chedester. Chedester, 643 P.2d at 534. Dr. Kam did not act unreasonably in expressing his opinion to Hyatt Regency's risk manager, regardless of whether it might foreseeably cause Ms. Jacobsen-Wayne distress. The report was not addressed to her, and the doctor cannot be said to have intentionally directed his conduct toward her. It would be unreasonable to require a physician writing an independent medical report to sugar coat it, depriving his employer of his honest advice, in order to avoid upsetting the sensitivities of the subject of his report.
 
 
 33
 Ms. Jacobsen-Wayne's brief accuses the doctor of "gender bashing," and claims that gender bashing was the outrage. The report is 42 single spaced pages, providing a comprehensive discussion of Ms. Jacobsen-Wayne's entire medical history. The gender bashing she claims is that the report mentions that she had an abortion, that her husband had died of cancer recently causing her distress, that her son had been in trouble with the law, causing her further distress, and that she had a hysterectomy. Plaintiff's theory is that these were irrelevant, and that mentioning them in the course of the lengthy report reflected gender bias. The district court properly dismissed this claim.
 
 
 34
 As with many independent medical examination reports, the issue on which the doctor had to advise was whether the subject's complaint were caused by the accident for which compensation was sought, or by other things. A doctor could reasonably opine that distressing family circumstances and other medical conditions were relevant to the subject's inability to function fully in the workplace. Ms. Jacobsen-Wayne had reported numerous medical problems, all of which she related to her falls at work involving the peacock and the nut bag, and the car accident when she was being driven to the doctor. The symptoms she complained of included: sleeplessness, depression, anemia, cold sweats, blurred vision, headaches, abdominal pains, pains in her neck, back, hands, chest, numbness in her hands and arms, among others. There were also several other falls and accidents. Her treatment had included extensive medication for emotional problems, including: Prozac, Amitriptyline, Limbitrol, Flexeril, Dalmane and Xanax, among others. Dr. Kam expressed the opinion, based on his examination of the patient, and his review of her extensive medical history, that "significant preexisting psychosocial problems" rather than the work related injuries were what interfered with her ability to work. There was no outrage to that, regardless of whether the doctor mentioned family problems and medical conditions which could only befall females in the course of reaching and expressing that opinion.
 
 
 35
 This case should be disposed of consistently with Wong. Wong v. Panis, 7 Haw. App. 414, 772 P.2d 695, 701 (Haw Ct. App. 1989). Wong affirms a summary judgment dismissing a claim of intentional infliction of mental distress based on abusive questions asked a plaintiff in litigation. The court explained that the alleged abuses were not "outrageous or beyond the bounds of decency" and that the defendants were "entitled to present the Panises' side of the running dispute and to vindicate their position." That the questions were "embarrassing" did not make them "so unreasonable as to create liability for an intentional tort."
 
 
 36
 The case is unlike Marshall. Marshall v. University of Hawaii, 9 Haw. App. 21, 821 P.2d 937 (Haw. Ct. App. 1991). There an associate professor was denied tenure because of a sexual harassment complaint asserted during his tenure review process. Id., 821 P.2d at 946. The college did not follow its own procedures regarding the sexual harassment complaint, did not require a showing regarding the more than six months delay in filing the complaint after the alleged harassment as its own regulations required, and did not require the complaining party to put the complaint in writing as required by its regulations. Id. The professor alleged that the complaint was maliciously instigated by the defendants, yet he was not allowed to conduct discovery to find out why the college departed from policy, and whether the departure was maliciously motivated. These allegations were bolstered by the fact that the allegations were brought forth near the eve of his tenure confirmation. The court in Marshall held that there was a genuine issue of fact regarding reasonableness which, in the truncated condition of discovery, precluded summary judgment. Id. at 947.
 
 
 37
 D. Injunctive Relief.
 
 
 38
 Jacobsen-Wayne claims entitlement to an injunction requiring Dr. Kam to "recall" the report and "apologize" to Jacobsen-Wayne. Her legal basis is the negligence and fraud discussed above, so the claim for an injunction falls with those claims.
 
 III.
 
 39
 If a doctor performing an independent medical examination must be wary of tort liability because the doctor's report may be upsetting or may be deemed by an attorney to be insensitive to the plaintiff, then the tort can only stand as a barrier to truth. I am confident that Hawaii would not subordinate the truth finding function of its claims adjudication process to the possibility of avoiding and compensating distress caused to a claimant by adversarial proceedings. I would affirm.