## METHODIST HOSPITAL OF INDIANA, INC.

### v.

### The UNITED STATES.

### No. 232–78.

United States Court of Claims.

July 2, 1980.

Martin S. Zohn, Indianapolis, Ind., attorney of record, for plaintiff. Cadick, Burns, Duck & Peterson and Douglas J. Hill, Indianapolis, Ind., of counsel.

Glenn E. Harris, Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant. Jean Schepers, Washington, D. C., and Sanford V. Teplitzky, Baltimore, Md., of counsel.

Before DAVIS, KASHIWA and SMITH, Judges.

---

DAVIS, Judge:

Plaintiff Methodist Hospital of Indiana, Inc. (the Hospital), a provider of services under Part A of the Medicare Act, 42 U.S.C. § 1395 *et seq.*, asks us to reverse an administrative decision denying it reimbursement for certain accrued pension plan costs[1] which plaintiff contends were reasonable costs incurred in its fiscal year ending February 28, 1969, and which should therefore be reimbursable in that fiscal year. The basic issue presented for our resolution by the parties' cross-motions for summary judgment is whether the expenses incident to the funding of the pension trust must be reimbursed in the year in which they were accrued for accounting purposes although those sums were not actually funded in that year as they were required to be—or whether the Secretary of the Department of Health, Education and Welfare (HEW) (and others involved in the administration of the Medicare Act) could properly determine that such unpaid (albeit payable) costs are reimbursable only when actually paid into the pension fund, regardless of when they were technically accrued. We find that, in the particular circumstances presented here, the costs at issue were properly disallowed.[2]

The general statutory frame for reimbursement of provider costs has by now become well-known through the proliferation of Medicare litigation. The Medicare Act allows for the reimbursement of the reasonable costs of providing service to Medicare patients. 42 U.S.C. § 1395f(b)(1). What constitutes a reasonable cost is to be determined under section 1395x(v) of this Act. *Id.* Section 1395x(v)(1)(A) gives only a very general definition of that term, and leaves the Secretary broad discretion in making such determinations. Reasonable cost is to "be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions * * ." *Id.* A 1972 amendment to this section makes it clear that costs must also be "actually incurred" and necessary to the efficient delivery of needed health services. Pub. L.No. 92–603, § 223(a), 86 Stat. 1329, 1393 (1972).[3] The overall reimbursement regulation implementing section 1395x(v) was 20 C.F.R. § 405.451 (1969), declaring in relevant part that "All payments to providers of services must be based on the 'reasonable cost' of Services covered under title XVIII of the Act and related to care of beneficiaries. Reasonable cost includes all necessary and proper costs incurred in rendering the services, subject to principles relating to

1. The pension plan costs totaled $385,000. Plaintiff seeks reimbursement for that percentage of $385,000 equal to the appropriate Medicare utilization rate.

2. The initial decision to disallow the costs was made after a 1973 field audit conducted by Mutual Hospital, Inc. (the Plan). The Plan was chosen by Blue Cross Association (BCA) to assume the fiscal intermediary duties relating to plaintiff which had been delegated to BCA by the Secretary of HEW. Plaintiff appealed the disallowance to BCA's hearing officer, and the hearing officer upheld the Plan's decision. This decision was not reversed by the Secretary, and stands as the final agency determination. The court case was brought originally in the United States District Court for the Southern District of Indiana but was dismissed by that court for lack of subject matter jurisdiction without prejudice to plaintiff's proceeding in this court.

Defendant continues to take the position that this court does not have subject matter jurisdiction over this action. For the reasons set forth in *Whitecliff, Inc. v. United States*, 210 Ct.Cl. 53, 536 F.2d 347 (1976), *cert. denied*, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977), and succeeding opinions, we reject that argument.

3. Plaintiff cites and relies on this statute in its amended form. The addition of the words "actually incurred" appears to us an explicit statement of a principle implicit in the term "reasonable cost", rather than a substantive change in the law. Therefore, we will apply the statute as if its requirements in this respect were identical before and after the amendment, even though the wording change was not effective until accounting periods beginning in 1973. *See*, Pub.L.No. 92–603, § 223(h), 86 Stat. 1329, 1394 (1972).

specific items of revenue and cost. * * ."[4]

In addition to the regulations on reasonable costs, HEW also provides guidance through interpretive publications such as the Medicare Provider Reimbursement Manual (the Manual). Pursuant to section 2142.6 of Revision 16 of the Manual (issued in the spring of 1970), a provider's liability to fund a pension trust must be met within 75 days after the close of the provider's cost reporting period (here, plaintiff's fiscal year ending February 28, 1969) in order to qualify for reimbursement as a Medicare cost.[5] Plaintiff argues that, for numerous reasons, Revision 16 is invalid, or inapplicable to it, and should not be applied to the costs in question.[6] Because we find that even in the absence of Revision 16 the disallowance here would be proper, we need not reach the question of whether Revision 16 could, purely of its own force, bar reimbursement of plaintiff's pension costs.

The controlling factor which validates the administrative decision to disallow plaintiff's pension costs is plaintiff's admission[7] that it was required, by the terms of the pension plan, or the collective bargaining agreement, or by some rule of law, to actually fund the pension plan within its fiscal year ending February 28, 1969 or shortly thereafter, rather than to simply accrue the costs as a liability during that period. Plaintiff's counsel specifically stated his willingness for us to decide the case on that assumption, and we do so since we believe that it is dispositive of the action.

The situation, then, is that for the year involved (and for a considerable period thereafter) the Hospital had refused to fund its pension costs for that year, in the face of a binding legal obligation to do so. The Secretary could clearly have a legitimate concern as to whether that unpaid liability represented reasonable and proper costs incurred by plaintiff during that fiscal year. The economic reality being that the Hospital, for whatever reason, had not made the required pension plan payments during that period, HEW could have reasonable and legitimate doubts as to when, if ever, those expenses would be paid, and therefore could, within its administrative discretion, determine that they did not then constitute reasonable and proper costs incurred and reimbursable for the fiscal year ending February 28, 1969. The administrative conclusion—that the Hospital's failure or refusal to comply with its legal obligation to pay during the fiscal year means that the provider did not actually incur the pension cost and that the alleged cost was not properly and reasonably incurred in fact during that period—does not run counter to the Medicare Act, to the general reimbursement regulations, or (as we shall point out *infra*) to any specific reimbursement regulation.[8]

**4.** Medicare Act regulations are now contained in Title 42 of the Code of Federal Regulations.

**5.** This "75 day rule" was adopted in large part to make Medicare reimbursement consistent with the treatment of pension costs for tax purposes. *See*, 26 U.S.C. § 404(a)(6). Under section 404(a)(6), an employer may deduct pension contributions for the year liability is incurred, as long as payment is made before the filing of the employer's tax return which is due within 75 days after the close of the tax year (and any extensions thereto). *Cf. Raybestos Manhatan, Inc. v. United States*, 220 Ct.Cl. ——, 597 F.2d 1379 (1979).

**6.** Chief among these arguments are the allegations that: (1) Revision 16 is contrary to the Medicare Act and regulations, particularly those which require accrual accounting; (2) Revision 16 should not apply to plaintiff because it was not published in the Federal Register and plaintiff did not have actual and timely notice of it as required by the Administrative Procedure Act (APA), 5 U.S.C. § 552; (3) Revision 16 was not promulgated in accordance with the APA, 5 U.S.C. § 553 and the Medicare Act; and (4) Revision 16 was retroactively applied to plaintiff and is thus unconstitutional and illegal.

**7.** This admission surfaced during oral argument, in response to a query from the bench. The fact was not revealed or discussed in the briefs of either party.

**8.** Plaintiff argues that the Secretary was not justified in acting to require actual payment of costs in the pension plan area because there is less possibility for abuse in that situation than in most other business situations. Regardless of the merits of this argument as a general proposition, it is certainly not valid here where

In that light, Revision 16, insofar as this specific claimant is concerned—and whatever the Revision's effect on providers in other situations—did not add to the existing general statutory or regulatory standards but merely spelled out for pension costs what was already implicit in those existing criteria, i. e., that to be reimbursable a cost must be reasonable, proper and actually incurred in the period involved. *See Gosman v. United States,* 215 Ct.Cl. 617, 630–31, 573 F.2d 31, 39–40 (1978). Plaintiff knew that it had a legal obligation to fund the pension costs but chose to ignore that legal duty. When the Medicare authorities disallowed reimbursement, the Hospital could not rightly claim unfair surprise by a new requirement.[9]

In response, plaintiff takes the position that the conceded requirement that its pension plan costs be funded currently is relevant only in that it establishes their status as accrued in the fiscal year, and by that very token that they were reimbursable costs. The position is that, since the costs were expenses of the Hospital for purposes of its accrual basis accounting, they *must* be reimbursed under the Medicare Act, regardless of the failure or refusal to comply with the requirement to pay. There does not appear to be any dispute as to whether these pension costs were accrued for accounting purposes during plaintiff's fiscal year ending February 28, 1969. But that is not our issue. Unless it is specifically demanded by statute or regulation, the Secretary is not bound to follow a certain method

of accounting, where to do so would produce a result antithetical to basic mandates of the Medicare Act and regulations. Under the Act, the question which must be answered affirmatively before reimbursement of costs is proper, is whether such costs are reasonable costs, actually incurred and necessary for the efficient delivery of services. 42 U.S.C. § 1395x(v)(1)(A).

Neither that statute nor the regulations required that the Secretary find that a cost is reasonable and actually incurred simply because it is an accrued liability for accounting purposes. The Act itself does not require that technical accounting principles control over the statutory mandate of reimbursing only reasonable costs. To the contrary, it clearly specifies that costs must meet certain requirements unrelated to any particular accounting method. While section 1395x(v)(1)(A) provides that costs should be evaluated in accordance with the relevant regulations in order to determine their propriety, this does not mean that they can only be found improper pursuant to a specific regulation. The Secretary and his delegate have the discretion to determine that a cost was not reasonable or not actually incurred and thus non-reimbursable, independent of a detailed description in a regulation excluding the cost, provided that they do so consistently with existing, general regulatory and statutory requirements. *See,* 42 U.S.C. § 1395x(v)(1)(A).[10]

No regulation under the Medicare Act forces the Secretary to accept a cost as reasonable on the sole ground that it is a

---

plaintiff's violation of legal requirements was a clear abuse of pension plan funding requirements. Our holding is limited to that situation and does not cover the different circumstance in which there is no requirement to fund during the year for which reimbursement is sought.

Since Congress has provided that, to be deductible for income tax purposes, employer pension plan contributions must, in general, be paid in the taxable year (or within a 75-day grace period), *see* 26 U.S.C. § 404(a), it is hardly irrational for the Medicare authorities to make the same requirement for the narrower class of those pension contributions which are legally required (by agreement or governing law) to be paid within the reimbursement year.

9. BCA's hearing officer held that plaintiff had until June 1, 1970 in which to fund the pension costs but had not done so by then (or considerably later). June 1, 1970 was a very substantial period after the close of the fiscal year ending February 28, 1969, and a month or so after the issuance of Revision 16. Plaintiff does not contend, and could not on this record, that it would have funded the amount for the fiscal year at stake if it had had somewhat more time after Revision 16 was issued.

10. Thus plaintiff's argument that the Secretary must meet certain requirements before promulgating cost regulations under section 1395x(v)(1)(A) is irrelevant since the case is governed by pre-existing general standards.

cost under accrual basis accounting. Plaintiff's reliance on 20 C.F.R. § 405.453 (1969) as support for that position is misplaced. Section 405.453 requires that cost data meeting certain standards and requirements be furnished by providers which receive payment on the basis of reimbursable costs. That section requires, *inter alia*, that cost data "be based on * * * the accrual basis of accounting," 20 C.F.R. § 405.-453(a), "which is recognized as the most accurate basis for determining costs." 20 C.F.R. § 405.453(e). Nowhere does that regulation state that a cost must be reimbursed because it is determined to be, and included in cost data as, an incurred expense under accrual basis accounting. This regulation sets up only the forms and procedures to be used in providing cost data, and even though it recognizes accrual basis accounting as the most accurate basis for determining costs, it does not bind the Secretary to use that method as the sole gauge for establishing the reasonableness of a particular expense. "It is important to note that different goals may in some instances be involved in principles of reimbursement under the Medicare Program as contrasted to accounting for the purposes of measuring income." *Gosman v. United States, supra*, 215 Ct.Cl. at 633 n.16, 573 F.2d at 41 n.16 (1978). This is clearly true in the instant case.

The method to be used in the determination of reasonable costs "is the result of the [Secretary's] exercise of his economic judgment in an area committed to his expertise." *Springdale Convalescent Center v. Mathews*, 545 F.2d 943, 955 (5th Cir. 1977). *See also, Gosman, supra*, 215 Ct.Cl. at 632, 573 F.2d at 41. Where, as is the case here, several different methods of accounting could be used, "the judgment of Health, Education and Welfare as to which method most appropriately implements the principles of reimbursement under the Medicare Program is entitled to deference." *Gosman, supra*, 215 Ct.Cl. at 632, 573 F.2d at 41. In this instance the Medicare authorities have decided that a cost was not proper or reasonable, and was not incurred, because it was not actually paid within the accounting period (or a defined period thereafter), though it was affirmatively required by its own governing law to be so paid. In the circumstances of the case, those authorities were justified and acting fully within their discretion in making this determination, and we therefore accord deference to their judgment.[11]

In thus holding for the Government on this specific claim, we leave entirely open the question of whether and how the pension costs for the fiscal year ending February 28, 1969, will be reimbursed when they are actually paid. That issue is not now before us.

Defendant's motion for summary judgment is granted and plaintiff's motion is denied. The petition is dismissed.

---

**11.** Plaintiff says that 20 C.F.R. § 405.451(c)(3) (1969), which lists pension plan contributions as a necessary and proper expense reimbursable under the Act, requires the Secretary to reimburse plaintiff in this instance. We disagree. The Secretary is not denying all pension plan cost reimbursement; he is only requiring that pension costs required to be paid be actually paid before plaintiff may recoup them.

Plaintiff has also placed reliance on certain cost accounting regulations outside the Medicare sphere, 4 C.F.R. §§ 400, 412, for the proposition that its accrued but unpaid pension costs were properly reimbursable. These regulations are inapplicable, first because they are designed for use in achieving uniformity and consistency in cost accounting principles used for defense contracts, and, second, because the question we are dealing with is that of reasonable cost, not accounting procedures. *See* discussion of 20 C.F.R. § 405.453 (1969) (accrual basis accounting under the Medicare Act), *supra*.