**TRUSTEES OF the CALIFORNIA STATE UNIVERSITY, Plaintiff–Appellee,**

v.

**Richard W. RILEY, Secretary of the Department of Education, Defendant–Appellant.**

**No. 94–55455.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 11, 1995.

Decided Jan. 26, 1996.

As Amended Feb. 20, 1996.

Constance A. Wynn, United States Department of Justice, Washington, D.C., for defendant-appellant.

Lee R. Rydalch, Office of General Counsel, California State University, Long Beach, California, for plaintiff-appellee.

Before: G. NELSON and KLEINFELD, Circuit Judges, and LEGGE,[*] District Judge.

T.G. NELSON, Circuit Judge:

The Secretary of Education appeals the district court's grant of summary judgment to the Trustees of the California State University System ("CSU"). The district court determined that CSU was not accountable for any interest earned on undisbursed Pell Grant funds during the audit period, and enjoined the Secretary from attempting to collect such money.

We AFFIRM in part, REVERSE in part, and REMAND.

[*] Honorable Charles A. Legge, United States District Judge for the Northern District of California, sitting by designation.

## FACTS AND PROCEDURAL HISTORY

### A. Background

The Pell Grant Program, 20 U.S.C. § 1070a (Supp.1983), provides financial assistance to eligible, financially needy students attending eligible institutions of higher education to help them pay for their post-secondary education costs. The amount of financial assistance given to eligible students is determined by statute and regulations. Eligible students receive their Pell Grant awards either through the educational institution under the Regular Disbursement System, or directly from the Secretary under the Alternate Disbursement System. 34 C.F.R. Part 690, Subpart H (1985).

An eligible institution participating in the Pell Grant Program receives Pell Grant funds from the Department of Education ("Department") under a letter of credit payment system. Each institution is allowed to draw down funds from a Federal Reserve Bank servicing the area.

In this case, Pell Grant funds transferred from the Federal Reserve Bank were deposited into the State Treasurer's Federal Trust Account, as required by California state law. CSU recovered these funds by presenting a claim to the State Treasurer. Pell Grant funds thus recovered were then deposited into CSU's Agency Bank Account at the State Treasury. Funds deposited in the State's Federal Trust and Agency Bank Accounts were pooled and invested daily in a Money Investment Fund under the control of the Pooled Money Investment Board. Interest earned on the Fund was credited to the State's General Fund. *See* Cal.Gen.Code §§ 16305.5, 16305.7.

### B. The Audit

The Department, through the Office of Inspection General ("OIG"), performed an audit of the Pell Grant program of fourteen CSU institutions for the period of July 1, 1983, through May 31, 1986. In February 1987, the Department's auditors issued a final audit report. The auditors concluded

that by drawing down Pell Grant funds earlier than needed for disbursement and retaining the funds in state accounts for periods of up to seventy-two days, CSU had earned $534,329 in interest on the deposited funds. Based on its final audit, the Department directed CSU to repay the interest. CSU challenged the final audit determination and requested a hearing.

### C. Administrative Decision

Appearing before the Administrative Law Judge ("ALJ"), CSU argued that § 6503(a) of the Intergovernmental Cooperation Act ("ICA"), 31 U.S.C. §§ 6501–6508 (1983), which provides that a state "is not accountable for interest earned on grant money pending its disbursement for program purposes," applies to Pell Grant funds, and therefore it is not required to repay interest.[1] In opposition, the Department contended that Pell Grant funds do not constitute "grants" as defined by the ICA. The ALJ rejected the Department's argument and ruled in favor of CSU.

The ALJ alternatively held that the Department's auditors improperly calculated the interest by utilizing the month-end method of interest calculation. In arriving at his decision, the ALJ considered an accounting abstract, which CSU submitted with its administrative appeal brief, showing that interest calculated on a daily cash flow basis, rather than the month-end method used by the agency, was more accurate and reflected no net interest earnings. The ALJ rejected the Department's argument that the accounting abstract should not be considered because it was not timely filed under the agency regulation, 34 C.F.R. § 668.116.

The Secretary, finding that Pell Grant funds are not "grant" monies within the meaning of the ICA, reversed the ALJ. Additionally, the Secretary found that there was no error in the Department's calculation of the interest due, that the accounting abstract was not timely submitted, and that the ALJ erred in considering the accounting abstract.

### D. District Court

The district court, adopting CSU's "Statement of Uncontroverted Facts and Conclusions of Law," vacated the Secretary's decision and granted CSU's motion for summary judgment. The district court held: (1) the Secretary's decision was contrary to the ICA; (2) the Secretary misapplied 34 C.F.R. 668.116(e)(1)(ii); and (3) the Secretary's reversal of the ALJ's decision was arbitrary because the Department's selection of the accounting method used to calculate interest was arbitrary and capricious.

## ANALYSIS

### A. Standard of Review

 An order granting summary judgment is reviewed *de novo*. The agency decision may be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Review under the arbitrary and capricious standard is narrow, and the reviewing court may not substitute its judgment for that of the agency. *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378, 109 S.Ct. 1851, 1861, 104 L.Ed.2d 377 (1989). In reviewing an agency's construction of a statute, the court must reject those constructions that are contrary to clear congressional intent or frustrate the policy that Congress sought to implement. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984).

### B. Discussion

#### 1. The ICA and the Pell Grant Program

 CSU argues that Pell Grant funds are "grants" as defined by the ICA, and thus it is not accountable for retained interest earned on Pell Grant funds pending disbursement. In the 1983 version of the ICA, § 6503 provides that "[a] State is not accountable for

---

1. Congress amended § 6503 of the ICA in the Cash Management Improvement Act of 1990. Pub.L. No. 101–453, § 5(b), Oct. 24, 1990, 104 Stat. 1059. As of October 24, 1992, states were required to account for interest on federal monies held prior to the state's expenditures. Pub.L. No. 101–453 at § 5(e).

interest earned on grant money pending its disbursement for program purposes." Section 6501(4)(A) defines "grant" as:

> money ... that is paid or provided by the United States Government under a fixed annual or total authorization, to a State, to a local government, or to a beneficiary under a plan or program administered by a State or a local government that is subject to approval by an executive agency, if the authorization
>
> . . . . .
>
> (ii) specifies directly, or establishes by means of a formula, the amount that may be provided to the State or local government, or the amount to be allotted for use in each State by the State, local government, and beneficiaries.

■ The language of 31 U.S.C. § 6501(4)(A) may be distilled into a three-pronged test to determine if certain federal funds are considered to be "grants" under the ICA: (1) the money is provided by the federal government under a fixed annual or total authorization; (2) the federal aid program is administered by a State or a local government under a program that was approved by an executive agency; and (3) the authorization statute for the federal aid program specifies directly, or establishes by means of a formula, the amount to be provided or allotted for use in each state.

According to the Department, Pell Grant funds are not "grants" under the ICA because the second and third criteria are not met. The Department contends that Pell Grant funds do not satisfy the second prong of the ICA because universities do not "administer" the Pell Grant program in the manner contemplated by the ICA.

A review of the ICA and the Pell Grant authorizing statute in force during the audit period indicates that the nature of Pell Grant funds differ from federal "grants" contemplated under the ICA. The "grants" that are the subject of the ICA are grants *to states*, local governments, or beneficiaries *under a state plan or program administered by the state.* A state plan or program must comply with the conditions set forth by the executive agency carrying out the federal program.

An example of such a program is the Low–Income Home Energy Assistance Program, 42 U.S.C. §§ 8621–8629 (1989). The Low–Income Home Energy Assistance Program is a program which provides grants to beneficiaries *under a state plan or program administered by the state.* In order to participate in the Low–Income Home Energy Assistance Program, a state must submit an application to the Secretary of Health and Human Services. As part of the application process, a state must submit a plan, for the Secretary's approval, which describes eligibility requirements to be used by the state and the methods the state will employ to administer the plan.

The Pell Grant Program, however, is a program which provides grants directly from the federal government to individual students who meet the eligibility requirements outlined in the Pell Grant statute. The *students* submit applications for Pell Grants which are evaluated under the strict guidelines set by the Secretary in 20 U.S.C. § 1070a(f). Although universities where the eligible students attend may process student applications, the eligibility determinations are made in accordance with the guidelines set by the Secretary. Unlike the Low–Income Home Energy Assistance Program, under the Pell Grant Program the universities do not submit applications or plans for administering the program to the Secretary. Further, the amount of Pell Grant funds that a university may access in a given year is based solely on the amount that is granted to each eligible student attending that university. 20 U.S.C. § 1070a(a)(1). Pell Grants are grants directly from the federal government to eligible students, and are not "administered" by the state under the ICA. CSU and other participating universities act as mere conduits for disbursing Pell Grants from the Secretary to the students.

■ The Secretary is authorized under 20 U.S.C. § 1070a to administer the Pell Grant Program. A reasonable interpretation of the statute by the Secretary, who is authorized to administer it, is entitled to deference. *Chevron, U.S.A., Inc. v. NRDC,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). As such, the Secretary's determina-

tion that the universities do not "administer" the Pell Grant Program as contemplated under the ICA is given its due weight.

Moreover, Pell Grants are available to eligible students attending "eligible institutions." State universities are not the only institutions deemed "eligible" under this statute. 20 U.S.C. §§ 1088, 1094. Eligible students attending private universities are also eligible for Pell Grants. If CSU's argument is accepted, then under the ICA, state universities would be exempt from accounting for any interest earned on undisbursed Pell Grant funds, while private universities would have to account for any interest earned on similar funds. There is no justification for state universities gaining a financial windfall from the Pell Grant Program. It is apparent that funds to be disbursed to students under the Pell Grant Program are not "grants" as contemplated by the ICA.

Because we have determined that Pell Grants are not "grants" under the ICA, we do not reach the third prong of the ICA requirement. We do, however, reach the issue of whether the Secretary's method of calculating retained interest was arbitrary.

### 2. Interest Earned by CSU

#### a. Accounting Abstract

█ The OIG's final audit determination was dated August 5, 1988. CSU filed its request for administrative review of the final audit on September 21, 1988. CSU's accounting abstract was submitted on December 30, 1988. The ALJ took the abstract into consideration in determining that the final audit was incorrect. The ALJ found that the section 668.116(e)(1)(ii), forty-five day time restriction for submitting evidence did not apply to the accounting abstract. The ALJ reasoned that the accounting abstract was based on records previously available to the Department, and therefore the abstract was not an "underlying work paper, record, or material under 34 C.F.R. 668.116(e)(1)(ii)." Reversing the ALJ's decision, the Secretary held that the abstract was submitted beyond the forty-five day time restriction, and thus the ALJ's consideration of the abstract was improper.

Under the authority of 20 U.S.C. § 1094, the Secretary has promulgated regulations governing the institutions participating in the various federal programs for financial assistance for students, including the Pell Grant Program. As a condition of participation in the Pell Grant Program, the institutions must comply with the regulation which includes submitting to audits. 34 C.F.R. § 668.12(a). Further, the regulations set forth the procedural requirements for appealing a final audit determination. Section 668.113 of the regulation states in relevant part:

(a) An institution seeking the Secretary's review of a final audit determination ... shall file a written request for review with the designated [Education Department] official....

(b) The institution shall file its request for review and any records or material admissible under the terms of §§ 668.116(e) and (f) of this subpart, no later than 45 days from the date it receives the final audit determination....

34 C.F.R. § 668.113 (1989). Section 668.116(e) provides:

(1) A party may submit as evidence to the administrative law judge only materials within one or more of the following categories:

(i) [Education Department] audit reports and audit work papers for audits performed by the United States Education Department Office of Inspector General.

(ii) Institutional audit work papers, records, and other materials, if the institution provide[s] those work papers, records, or materials to [the Education Department] no later than the date by which it was required to file its request for review in accordance with § 668.113.

34 C.F.R. § 668.116 (1989).

It is important to note that the term used by the ALJ, "underlying work paper," is not a term found in the regulations. The regulations only refer to "institutional audit work papers." The ALJ's interjection of the modifier, "underlying," changes the meaning of the words, "audit work papers." According to the ALJ, the abstract was admissible be-

cause it was merely a summary of the information in the records and materials previously available to the agency, and not "new" information. However, nowhere in sections 668.116 or 668.113 of the regulations does it state, or imply, that the time limits for submitting institutional audit papers to agency officials reviewing the final audit apply only to documents or records that were not previously available to the auditors.

■ The regulations set forth guidelines for institutions seeking review of final audits. As stated above, an agency's interpretation of its own regulations is given deference. *Thomas Jefferson Univ. v. Shalala,* —— U.S. ——, ——, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994). We "defer to the Secretary's interpretation unless an 'alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.'" *Id.* at —— – ——, 114 S.Ct. at 2386–87, *quoting Gardebring v. Jenkins,* 485 U.S. 415, 430, 108 S.Ct. 1306, 1314, 99 L.Ed.2d 515 (1988). The Secretary rejected the ALJ's determination and found that the abstract was an "institutional audit work paper" and that it was not timely submitted under the regulations. We agree. The Secretary's interpretation of section 668.113 of the regulations was not arbitrary, capricious, or an abuse of discretion, and therefore, the untimely accounting abstract should have been disregarded.

### b. Accrued Interest

■ The final issue is whether CSU earned any interest on the Pell Grant funds pending disbursement to the students, and if so, what is the amount of the interest. CSU argues that the Department's utilization of the month-end accounting method resulted in an inaccurate calculation of interest. In opposition to CSU's argument, the Department, citing *Methodist Hosp. of Indiana, Inc., v. United States,* 626 F.2d 823, 827, 224 Ct.Cl. 449 (1980), contends that the agency, in deciding which accounting method to use, need not select the method that yields the most accurate result.

The Department is correct in that the task of the reviewing court is not to determine whether the accounting method employed by the Secretary is better or more accurate than the method proposed by CSU, but rather, whether it is arbitrary, capricious, or contrary to law. *Brooklyn Hosp. v. Schweiker,* 596 F.Supp. 326, 337 (E.D.N.Y.1984). Nevertheless, the Department overstates the holding in *Methodist.* In *Methodist,* the hospital sought review of the decision by the Secretary of Health, Education, and Welfare ("HEW") denying reimbursement for accrued pension plan costs in a fiscal year. The HEW denied the reimbursement based on the fact that although the accrual basis accounting method used by the hospital reflected that the costs were accrued, the reality was that the hospital did not actually incur those costs. In rejecting the hospital's argument that the costs should be reimbursed because the accrual basis accounting method was the most accurate method of determining costs, the court held that neither the statute nor the regulations required the Secretary to find that a cost is reasonable and actually incurred simply because it is an accrued liability for accounting purposes. *Methodist,* 626 F.2d at 826.

Therefore, *Methodist* does not support the Secretary's proposition that the Secretary does not have to select the most accurate accounting method in any case. Rather, *Methodist* holds that if utilization of an accounting method indicates debits which actually have not been paid out, then the Secretary is justified in withholding reimbursement until the costs actually have been incurred, "where to do [otherwise] would produce a result that is antithetical" to the controlling statute and regulations. *Id.*

The Department calculated interest by crediting itself with interest for a full month in which CSU had Department money on deposit on the last day of the month, as though that amount had been on deposit for the entire month. It ignored months in which, on the last day, the CSU account showed a negative balance because CSU was owed money. This method of accounting was arbitrary and capricious. It is not useful to determine how much interest CSU might have owed on Department advances. The only conceivable justification for it is ease of

calculation, but that is much less significant than it would have been thirty years ago, before electronic calculators and laptop computers. The disadvantage is arbitrary and highly inaccurate calculations, and vulnerability to manipulation. Suppose, hypothetically, that the Department owes CSU $10 million for 10 days, they're square for twenty days, and CSU owes the Department $10 million for one day, in a 31 day month. At 5%, the Department owes CSU about $13,699 for the ten days, and CSU owes the Department about $1,370 for the one day, for a net entitlement in favor of CSU of $12,329. Yet the Department's method would enable it to collect interest on $10 million for 31 days, amounting to about $42,466. It is certainly arbitrary where a party entitled to collect $12,329 is made to pay $42,466 instead.

The above example is, of course, hypothetical. If the Department made available to California through letters of credit the amounts to which CSU was entitled, and negative balances in CSU accounts resulted from delays by California in drawing against the letters of credit, or by the California state treasury in disbursing to CSU, then CSU should not be permitted to use the negative balances to offset its positive balances on which it owed interest to the Department. The Secretary must recalculate interest in a nonarbitrary way on remand.

## CONCLUSION

For the reasons stated above, the district court's decision is AFFIRMED in part, REVERSED in part, and REMANDED with instructions to remand to the Secretary for recalculation of the interest.

No costs allowed.