**Steven SOONE, Plaintiff,**

v.

**KYO–YA COMPANY, LTD., d/b/a Waikiki Sheraton Hotel, Defendant.**

**No. CV. 03–00687 DAE–BMK.**

United States District Court, D. Hawai'i.

Jan. 26, 2005.

---

Charles H. Brower, Pioneer Plaza, Honolulu, HI, for Steven Soone, plaintiff.

Emest C. Moore, III, Daniel G. Mueller, Torkildson Katz Fonseca Jaffe, Moore & Hetherington, Honolulu, HI, for Kyo–Ya Company, Ltd. dba Sheraton Waikiki Hotel, defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO ALL CLAIMS

DAVID ALAN EZRA, Chief Judge.

The Court heard Defendant's Motion on January 14, 2005. Charles H. Brower, Esq., appeared at the hearing on behalf of Plaintiff; Daniel G. Mueller, Esq., appeared at the hearing on behalf of Defendant. After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS Defendant's Motion for Summary Judgment As To All Claims.

### BACKGROUND

Plaintiff Steven Soone has been an employee of Sheraton since 1971. Although Plaintiff continues to be employed by Sheraton, he has been on workmen's compensation leave since May 26, 2001. Soone is a member of Hotel Employees and Restaurant Employees, Local 5, and the terms of his employment are governed by the collective bargaining agreement reached between Sheraton and the union. At the time of his latest injury, Plaintiff was employed by Defendant as a bartender.

Defendant notes that, over the course of thirty years of employment at Sheraton, Plaintiff has made more than thirty claims for workmen's compensation benefits. In 1999, Plaintiff went on workmen's compensation leave due to alleged back problems and coughing. After a period of negotiations and the settlement of an EEOC charge filed by Plaintiff, Sheraton agreed to place Plaintiff in a new position that

would accommodate his sensitivity to second-hand cigarette smoke. Pursuant to this agreement, Plaintiff returned to work on May 17, 2001.

On May 26, 2001—little more than a week later—Plaintiff reported suffering a back injury as the result of a fall at work. Since this time, Plaintiff has received total temporary disability workmen's compensation benefits. He has not returned to work, but has been considered to be on authorized medical leave.

On May 8, 2002, Soone's physician released him to return to work, with the restriction that he may need frequent breaks and flexibility in schedule. Soone's physician stated he believed the restrictions would last at least another six to twelve months. As a reasonable accommodation, Plaintiff requested that he be reassigned to a "light duty" position, such as that of bartender supervisor or a position in the employee cafeteria. Although there were two light duty positions in the cafeteria, and one bartender supervision position, all three were filled by other bargaining unit employees. Sheraton refused Plaintiff's request that Sheraton remove one of these employees to allow Plaintiff to fill the position. Defendant then informed Plaintiff that it had no positions available that met Plaintiff's restrictions, and thus Plaintiff should seek work with another employer.

On April 9, 2003, Soone filed a charge of discrimination against Sheraton, alleging he was denied reasonable accommodation for his disability. On September 15, the EEOC dismissed the charge. Plaintiff then, on December 15, 2003, filed a complaint in federal court alleging violation of the Americans with Disabilities Act, intentional infliction of emotional distress, and negligent infliction of emotional distress. The complaint seeks recovery of damages, including punitive damages.

Defendant filed the instant motion for summary judgment on October 13, 2004. Plaintiff responded with its opposition on December 27. On January 3, 2005, Defendant filed its reply in support of the motion.

At the hearing on January 14, 2005, the Court made known to the parties its finding that there existed no issue of material fact, and that on the record as it then existed, summary judgment should be granted to the Defendant. Counsel for the Plaintiff responded, however, that evidence creating an issue of material fact had been discovered so recently that counsel had not had time to amend its filings. Specifically, the Court informed the parties of its finding that Defendant was not required by the ADA to displace an "incumbent" employee to create a position for Plaintiff, and therefore if Defendant had no vacant positions, Plaintiff could not state a claim for a violation of the ADA. Counsel for the Plaintiff claimed that new evidence had been discovered that would show there were three vacant positions—two "full-time bar supervisor positions" and a "relief bar position"—that were available when Plaintiff was certified to return to work, and that Plaintiff was able to perform these duties. Counsel represented to the Court that this evidence came from the deposition testimony of Union President Hernando Tan, and that it was previously unavailable because the deposition was only conducted a few days before the hearing. Based on these representations, the Court deferred its decision on Defendant's motion pursuant to Federal Rule of Civil Procedure 56(f) and gave the parties the opportunity to file supplemental briefs on this discrete issue; the Court made clear to the parties that no supplemental briefing on issues of law was requested.

On January 17, the Plaintiff filed its supplemental memorandum in opposi-

tion to Defendant's motion. Over half of the memorandum was devoted to argument regarding the law of the Ninth Circuit on "bumping." Those portions of the memorandum that did deal with the deposition testimony of Union President Hernando Tan set forth the following "facts":

1) In Tan's opinion, after Plaintiff's injury, he was still capable of performing the duties of his previous position of bartender or as a bartender supervisor;

2) In Tan's opinion, Plaintiff should have been able to return to other positions at the Sheraton other than in his previous department;

3) Tan says that Defendant informed him that Plaintiff would not be returned to work;

4) Tan believes that Defendant did not make reasonable accommodations for Plaintiff;

5) Tan interprets the collective bargaining agreement and the seniority system to provide that Defendant should displace an incumbent employee to make room for Plaintiff.

(Pl. Supplemental Memo. In Opp'n at 7–8.) This testimony in no way constitutes the factual showing that Plaintiff's counsel represented he would make. Indeed, Defendant cites Tan's deposition testimony to prove that, when asked if he was aware of vacancies available at the time Plaintiff was ready to return to work, Tan responded that he did not know. (Def. Supplemental Memo. In Supp. at 3 (citing Tan Dep. Tr. at 41:13–19).) The Court admonishes counsel for the Plaintiff for wasting the resources of both the parties and the Court by unnecessarily delaying the proceedings in this manner.[1] The Court therefore proceeds to analyze the law and relevant facts before it as follows.

*STANDARD OF REVIEW*

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be entered when:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the

---

1. The Court notes that counsel for the Plaintiff, apparently aware that the Tan deposition did not provide any evidence that a vacancy existed at the time Plaintiff was able to return to work, also submitted in its supplemental briefing the declarations of Plaintiff Soone and Plaintiff's Vocational Rehabilitation Counselor, Lyle McMillan. In Plaintiff's declaration, he states: "In March 2003, while I was still working with Lyle McMillan in vocational rehabilitation and still wanting to return to the hotel, one of the positions in the cafeteria opened up and I informed Lyle McMillan about that and he said he would follow up with the employer." (Soone Decl. of Jan. 17, 2005, at 12.) In McMillan's declaration, he states: "In March 2003, I was told by Mr. Soone that a light duty position counting meal tickets in the employee cafeteria had opened, however, Mr. Soone was not offered the position." (McMillan Decl. of Jan. 17, 2005, at 8.)

Regardless of the fact that these declarations are outside of the scope of the Court's limited request for supplemental briefing, the Court finds that they do not create a material issue of fact in this summary judgment inquiry. The Federal Rules of Civil Procedure provide that affidavits submitted in support of or opposition to a motion for summary judgment "shall set forth such facts as would be admissible in evidence." Fed.R.Civ.P. 56(e). These declarations are not admissible to prove the existence of a vacancy, because there is no showing that either declarant had personal knowledge that a vacancy existed. In order to withstand a motion for summary judgment, a Plaintiff may not rely on mere conclusory allegations. *United States v. Allen,* 578 F.2d 236, 237 (9th Cir.1978). The Court finds the declarations are simply an effort to transform Plaintiff's conclusory allegations into evidence, which is neither persuasive or permissible.

court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* at 323 106 S.Ct. 2548.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *Id.* The evidence submitted by the nonmovant, in opposition to a motion for summary judgment, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. 2505. In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. *Id.* at 254. The court must assess the adequacy of the nonmovant's response and must determine wheth-

er the showing the nonmovant asserts it will make at trial would be sufficient to carry its burden of proof. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: whether the evidence presents a sufficient disagreement to require submission to a jury, or it is so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

## DISCUSSION

I. *Plaintiff's claim under the Americans with Disabilities Act fails as a matter of law, because the accommodation he has requested is unreasonable.*

Count One of Plaintiff's complaint seeks recovery for Defendant's alleged violation of the Americans with Disabilities Act. Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless [the employer] can demonstrate that the accommodation would impose undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A). The only defense available to defendants under a reasonable accommodation claim is whether the requested reassignment works an "undue hardship on the employer." *Id.* The ADA defines a "qualified individual with a disability" as "an individual with a disability, who with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Reasonable accommodation is defined as including "job restructuring,

part-time or modified work schedules, *reassignment to a vacant position*, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B) (emphasis added).

Defendant argues in its motion for summary judgment that Plaintiff cannot state a claim for discrimination under the ADA, because the accommodation he sought was unreasonable. (Def. Mot. For Sum. Judg. at 7–8.) This is so, Defendant contends, because the positions to which Plaintiff sought reassignment were not vacant. *Id.* Defendant also claims that acquiescing to Plaintiff's request to remove an incumbent employee would constitute a violation of Defendant's collective bargaining agreement. *Id.* at 9–10. Plaintiff counters that the collective bargaining agreement actually requires that Defendant "bump" one of the incumbent employees to make room for Defendant. (Pl. Memo. In Opp'n at 4–6.) The Court finds that Plaintiff's claim of discrimination in violation of the ADA must be dismissed, because Plaintiff's proposed accommodation is unreasonable. The proposed accommodation is unreasonable, because the statute does not require employers to create vacancies for disabled employees. The Court does not reach a finding as to whether or not terminating the non-disabled occupants of the positions would violate the collective bargaining agreement.

A. *The plain language of the statute— as well as the legislative history, EEOC guidelines, and case precedent—dictates that Defendant is not required to fire a non-disabled employee to create a vacancy for Plaintiff.*

■ First, the guidelines promulgated by the Equal Employment Opportunity Commission and plain language of the statute indicate that an employer need not "bump"—i.e., terminate—non-disabled employees in an attempt to accommodate the reassignment needs of a disabled employee. It is well settled that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). When Congress explicitly authorizes an agency to promulgate regulations relating to a specific statute, "[s]uch legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* Moreover, a reasonable interpretation of a statute by the agency charged to administer it is entitled to deference from this Court. *Trustees of California State University v. Riley,* 74 F.3d 960, 964 (9th Cir.1996). This Court will only reject the EEOC's interpretation if it is contrary to clear congressional intent or frustrates the policy that Congress sought to implement. *Id.* at 963 (citing *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. 2778).

■ The EEOC's guidelines make clear that the agency does not interpret Section 12111(9)(B) as requiring an employer to fire a non-disabled employee so that a disabled employee may be reassigned to the newly created vacancy. The EEOC has explained:

> "Vacant" means that the position is available when the employee asks for reasonable accommodation, or that the employer knows that it will become available within a reasonable amount of time..... The employer does not have to bump an employee from a job in order to create a vacancy; nor does it have to create a new position.

Equal Employment Opportunity Commission, "Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act," issued on October 17, 2002, 2 EEOC Compliance Man. (BNA) § 902:0151, at § 902:0164. Additionally, the legislative history of the section leaves no doubt that Congress did not intend to force employers to oust some employees for the accommodation of others. The House Committee on Education and Labor explained:

> Reasonable accommodation may also include reassignment to a vacant position..... The Committee also wishes to make clear the reassignment need only be to a vacant position—*"bumping" another employee out of a position to create a vacancy is not required.*

H.R.Rep. No. 101–485(II), at 63 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 345, (emphasis added).

Although the Court is not aware of, and nor do the parties cite, any Ninth Circuit holding that explicitly interprets the meaning of "vacant" as used in this context, the other circuits that have considered this issue have accepted the EEOC's interpretation. In *Smith v. Midland Brake, Inc.,* the Tenth Circuit rejected the notion that the ADA's requirement of reasonable accommodation created some sort of preference scheme whereby the already-hired non-disabled would be forced to make way for the disabled. 180 F.3d 1154, 1174–75 (10th Cir.1999). Given the wording of the statute, which specifically refers to "reassignment to a vacant position," the court concluded: "Obviously then, under the terms of the statute, if a position is not vacant it is not reasonable to require an employer to bump another employee in order to reassign a disabled employee to that position." *Id.* (citing *White v. York Int'l Corp.,* 45 F.3d 357, 362 (10th Cir. 1995)). The Seventh Circuit has also embraced the EEOC's position regarding the meaning of "vacant" as used in the statute.

In *Eckles v. Consolidated Rail Corp.,* the court rejected a disabled employee's bid to "bump" a more senior employee from his or her job, finding that "the suggestion that reassignment be to a vacant position suggests that Congress did not intend that other employees lose their positions in order to accommodate a disabled coworker." 94 F.3d 1041, 1047 (7th Cir.1996).

Thus, given the wealth of authority weighing against Plaintiff's argument, the Court finds that Defendant Kyo–Ya was not required by the ADA to remove an already-hired employee from his or her position in order to accommodate Plaintiff's needs. Because this proffered accommodation was not reasonable, the Court finds that Plaintiff's claim of discrimination under the ADA must be dismissed.

B. *The Court finds that it need not reach the issue of whether or not Plaintiff's proposed accommodation would violate Defendant's collective bargaining agreement.*

■ Defendant also argues that Plaintiff's claim under the ADA must be dismissed, because his proposed accommodation would force Defendant to breach its collective bargaining agreement—a fact that would render the proposal per se unreasonable under Ninth Circuit precedent. In *Willis v. Pacific Maritime Association,* the court was faced with the decision of whether to declare proposed accommodations that would violate collective bargaining agreement seniority systems per se unreasonable, or to force district courts to engage in balancing tests that would consider the existence of such a system as just one of many factors. 244 F.3d 675, 680 (9th Cir.2001). The court ultimately found that the plain meaning of the statute supported a per se rule. As the court explained:

We believe that a balancing approach would leave employers too vulnerable to the possibility of guessing wrong when trying to weigh the relative benefits and burdens on disabled and non-disabled employees. The consequences of guessing wrong are especially burdensome in the context of a collectively bargained seniority system, where the employer and/or union might be subjected to grievances or lawsuits filed by workers who were "bumped," and employers would be vulnerable to charges of unfair labor practices under the NLRA. We are persuaded that it would be improper to subject an employer to the Hobson's choice of violating the ADA or the NLRA, or at least subjecting itself to the threat of litigation under these statutes, depending on the outcome of a "balancing" approach.

*Id.* at 681–682. The U.S. Supreme Court has since clarified that a collectively bargained seniority system will normally trump a contrary request for accommodation under the ADA; however, an employee "nonetheless remains free to show that special circumstances warrant a finding that, despite the presence of a seniority system (which the ADA may not trump in the run of cases), the requested 'accommodation' is 'reasonable' on the particular facts." *U.S. Airways, Inc., v. Barnett,* 535 U.S. 391, 406, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002).

█ Plaintiff and Defendant each invoke passages of the collective bargaining agreement in support of their respective arguments that Defendant's refusal to "bump" a non-disabled employee to make room for Plaintiff was in violation of, or in furtherance of, the collective bargaining agreement. The Court holds that, having established that the ADA's requirement of reasonable accommodation does not force employers to create vacancies for the disabled, the question of whether or not such a refusal constitutes a violation of the collective bargaining agreement has no bearing on the issue at hand—whether Defendant's refusal constitutes a violation of the ADA. *See Pond v. Michelin North America, Inc.,* 183 F.3d 592 (7th Cir.1999) (holding that disabled employee who alleged that her employer violated its collective bargaining agreement by failing to "bump" a less senior employee did not have a remedy under the ADA, as the ADA is not violated by a failure to "bump").

Moreover, to the extent that reaching this issue would require the Court to reach the merits of what would then be essentially a claim for breach of the collective bargaining agreement, such an inquiry would be inappropriate for this Court to conduct in these circumstances. As Defendant correctly notes, the remedies and grievance process provided by the collective bargaining agreement govern any such claims in the first instance. The courts have long deferred to the strong legislative policy favoring the resolution of labor disputes outside of the judicial system. The U.S. Supreme Court explained:

> The reasons for insulating arbitral decisions from judicial review are grounded in the federal statutes regulating labor-management relations. These statutes reflect a decided preference for private settlement of labor disputes without the intervention of government: The Labor Management Relations Act of 1947, 61 Stat. 154, 29 U.S.C. § 173(d), provides that "[f]inal adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." The courts have jurisdiction to enforce collective-bargaining contracts; but where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private

settlement mechanisms without dealing with the merits of the dispute.

*United Paperworkers Intern'l Union, AFL–CIO, et al. v. Misco, Inc.,* 484 U.S. 29, 37, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). The collective bargaining agreement at the heart of the instant dispute contains a lengthy provision on "Grievance and Arbitration Procedure," which provides the dispute resolution method that must be utilized by the parties in the first instance of any dispute over compliance with the terms of the agreement.

Thus, for the aforementioned reasons, the Court declines to reach the issue of whether Defendant's refusal to "bump" one of Plaintiff's non-disabled co-workers constituted a violation of, or conversely compliance with, the collective bargaining agreement.

II. *Plaintiff's claim for intentional infliction of emotional distress fails as a matter of law, because Defendant's actions were not "outrageous" and "beyond all bounds of decency."*

Plaintiff's second cause of action seeks recovery for intentional infliction of emotional distress. This claim apparently stems from an alleged communication between Plaintiff's union and one of Defendant's agents, during which Defendant's agent informed the union president that Plaintiff was not welcome to return to Defendant's premises. (Pl. Memo. In Opp'n at 9.) This is unclear, however, because Plaintiff does not present any legal argument in support of this claim in his Memorandum in Opposition or his Concise Statement of Facts in Opposition, nor does he direct the court's attention to any supporting facts. Assuming *arguendo* that, despite this failure, summary judgment need not be awarded against Plaintiff, Plaintiff's claim of intentional infliction of emotional distress nonetheless fails as a matter of law.

 The Hawaii Supreme Court has established that recovery for intentional infliction of emotional distress is permitted only if the alleged tortfeasor's acts were "unreasonable." *Ross v. Stouffer Hotel Co. (Hawaii) Ltd.,* 76 Hawai'i 454, 879 P.2d 1037, 1048 (1994); *Calleon v. Miyagi,* 76 Hawai'i 310, 876 P.2d 1278, 1289 (1994), as amended, 76 Hawai'i 453, 879 P.2d 558 (1994); *Chedester v. Stecker,* 64 Haw. 464, 643 P.2d 532, 535 (1982); *Marshall v. University of Hawaii,* 9 Haw.App. 21, 821 P.2d 937, 947 (1991). The court has further defined "unreasonable" as meaning "without just cause or excuse and beyond all bounds of decency." *Ross,* 879 P.2d at 1048 (citing *Chedester,* 643 P.2d at 535). In establishing this standard, the court has incorporated the definition "outrageous" as employed by Restatement (Second) of Torts.

Specifically, the court has cited the following passage from the Restatement, which explains the type of "outrageous" conduct that makes a claim for intentional infliction of emotional distress actionable:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Ross,* 879 P.2d at 1048 n. 12 (citing Restatement (Second) of Torts § 46 comment d (1965)). Moreover, the Hawaii courts have held that "whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable persons may differ on that question it should be left to the jury." *Ross,* 879 P.2d at 1048 (citing *Wong v. Panis,* 7 Haw.App. 414, 772 P.2d 695, 700 (1989)).

▮ The Court holds that it cannot find the conduct of Defendant's agents to have been outrageous or unreasonable. It is understandable, to be true, that a person will suffer distress upon learning that they are no longer employed. However, the Court finds that telling a union representative who will ultimately relay to the employee that the employee is terminated—and even going so far as to tell the representative that the employee may not return to the employer's premises—does not come close to meeting the standard for intentional infliction of emotional distress. Nothing about the conduct of Defendant's agents was beyond all bounds of decency or intolerable in a civilized community. As the Court finds that no reasonable minds could reach different conclusions on this matter, there is no fact issue to be resolved by the jury. Thus, Plaintiff fails to allege facts sufficient to maintain his claim of intentional infliction of emotional distress.

III. *Plaintiff's claim for negligent infliction of emotional distress fails as a matter of law, because Plaintiff has presented neither evidence of physical injury to any person or property, nor that a reasonable man would be unable to adequately cope with Defendant's actions.*

Plaintiff's third claim seeks recovery for negligent infliction of emotional distress. Plaintiff states that he does not oppose Defendant's motion for summary judgment as regards to this claim. Thus, Defendant's motion as respects to this claim is GRANTED. However, the Court notes that the instant factual circumstances do not give rise to a claim for negligent infliction of emotional distress under Hawaii law.

The Hawaii Supreme Court first recognized the independent tort of negligent infliction of "mental" distress in 1970. *Rodrigues v. State,* 52 Haw. 156, 472 P.2d 509 (1970). In Rodrigues, the court rejected the traditional rule "that there [was] no recovery for the negligent infliction of mental distress alone," and announced that "the preferable approach is to adopt general standards to test the genuineness and seriousness of mental distress in any particular case." 52 Haw. 156, 52 Haw. 283, 472 P.2d at 518–520 (citations omitted). The Court established that "serious mental distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Id.* at 171, 173, 472 P.2d at 519–20. Thus, with Rodrigues, Hawaii "became the first jurisdiction to allow recovery [for negligent infliction of emotional harm] without a showing of physically manifested harm" to the plaintiff. *John & Jane Roes, 1–100 v. FHP, Inc.,* 91 Hawai'i 470, 985 P.2d 661, 664 (1999) (citing *Campbell v. Animal Quarantine Station,* 63 Haw. 557, 560, 632 P.2d 1066, 1068 (1981)). The court made clear that these decisions were based on the policy that physical injury rules—which include requirements that a plaintiff must experience a physical impact, exhibit physical symptoms of harm, or be in the zone of danger created by the defendant's act—are inadequate methods of distinguishing between worthy and unworthy claims, and accordingly recovery for negligent infliction of emotional distress may be permitted without a showing of physically manifested harm to the

plaintiff. *FHP, Inc.*, 985 P.2d at 664 (citing *Masaki v. General Motors Corp.*, 71 Haw. 1, 18, 780 P.2d 566, 576 (1989); *Campbell*, 63 Haw. at 560, 632 P.2d at 1068; *Leong*, 55 Haw. at 407, 520 P.2d at 764; *Rodrigues*, 52 Haw. at 173, 472 P.2d at 520).

However, the Hawaii Supreme Court has qualified this holding with the proviso that "recovery for negligent infliction of emotional distress by one not physically injured is generally permitted only when there is 'some physical injury to property or [another] person' resulting from the defendant's conduct." *FHP, Inc.*, 985 P.2d at 665 (citing *Ross v. Stouffer Hotel Co. (Hawaii) Ltd.*, 76 Hawai'i 454, 879 P.2d 1037, 1048–49 (1994)). Thus, a plaintiff seeking damages for negligent infliction of emotional distress must generally demonstrate some predicate physical or property injury. The court has carved out some exceptions to this rule. For example, the court has allowed recovery for "particularly foreseeable" emotional distress in the context of a breach of contract where there is no predicate injury to the person. *FHP, Inc.*, 985 P.2d at 665. The court also allowed a claim for negligent infliction of emotional distress where the plaintiff was exposed to HIV-positive blood and placed in actual physical peril, even without any predicate showing of injury. *FHP, Inc.*, 985 P.2d at 668. The exceptions have stemmed from the reasonableness standard articulated in *Rodrigues*—i.e., where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case. *See generally FHP, Inc.*, 91 Hawai'i 470, 985 P.2d 661.

The Court notes that none of Defendant's alleged actions would give rise to a claim for negligent infliction of emotional distress. Defendant has not caused physical injury to any person or property. Moreover, despite the stress that is undoubtably caused by the loss of employment, the Court finds inapplicable the situations in which courts have carved out exceptions to this rule. Reasonable, normally constituted men can and do adequately cope with the mental stress engendered by the unfortunate, but not uncommon, experience of losing a job. Thus, for the aforementioned reasons, Plaintiff's claim for negligent infliction of emotional distress is DENIED.

IV. *Plaintiff's claim for punitive damages fails as a matter of law, because the court finds that he is not entitled to recovery under any of his substantive claims.*

Plaintiff's fourth claim, which asserts the right to punitive damages, is derivative of Plaintiff's three substantive claims. As the Court has granted summary judgment to Defendant on Plaintiff's three substantive claims, no ground remains upon which the Court could award punitive damages to Plaintiff. Thus, Plaintiff's claim for punitive damages is DISMISSED.

### CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's Motion for Summary Judgment As To All Claims.

IT IS SO ORDERED.